ESTATE OF ENGELHARDT: SEEGER, Appellant, vs. BUHRANDT
and others, Respondents.

*February 7—March 6, 1956.*

For the appellant there were briefs by *Jeffris, Mouat, Oestreich, Wood & Cunningham,* and oral argument by *Robert C. Lovejoy,* all of Janesville.

For the respondents there was a brief by *Ruzicka & Fulton* of Burlington, and *Benson, Butchart, Haley & Benson* of Racine, and oral argument by *Donald A. Butchart* and *Robert M. Fulton.*

STEINLE, J.   The deceased, Emilie Engelhardt, was born in Germany on April 3, 1866.   She was a daughter of Carl

and Wilhelmine Kranske. The mother's maiden name was Wilhelmine Buhrandt. Emilie Engelhardt was married twice. Her first husband was Carl Meyer. He died in 1926. She married George Engelhardt in 1930. He predeceased her. There were no descendants.

The decedent's mother, Wilhelmine Kranske, nee Buhrandt, was born in Germany in 1831. She died a resident of the town of Spring Prairie, Walworth county, Wisconsin, in 1906. The decedent's father, Carl Kranske, was born in Germany in either 1834 or 1835, and he died in the town of Spring Prairie, Walworth county, Wisconsin, in 1901. The parents, Carl Kranske and Wilhelmine Kranske, were married in Germany sometime between May 9, 1854, and April 10, 1861. They immigrated to the United States in 1885.

Born to decedent's mother in Germany on May 9, 1854, and before the mother's marriage to Carl Kranske, was Franz Buhrandt. He married Alwina Pahnke in Germany in 1881. Franz Buhrandt died at Tess Corners, Wisconsin, on October 27, 1900. The wife, Alwina, died at Tess Corners on February 4, 1922. The respondents are the legitimate children and the only descendants of Franz and Alwina Buhrandt who were living at the time of the death of the decedent, Emilie Engelhardt.

Born in Germany on April 10, 1861, to Carl and Wilhelmine Kranske, parents of decedent, was Augusta Kranske who married August Seeger at a date not known. Augusta Seeger, nee Kranske, died a resident of Milwaukee, Wisconsin, in 1893. Her husband, August, had predeceased her. The appellant, Theodore C. Seeger, is a legitimate child of August and Augusta Seeger and is their only descendant who was living at the time of the death of the decedent, Emilie Engelhardt.

Born in Germany on January 18, 1863, to Carl and Wilhelmine Kranske, parents of decedent, was Hermine

Kranske who married Henry Kieckhaefer at a date not known. Hermine Kieckhaefer, nee Kranske, died a resident of Oshkosh, Wisconsin, on February 6, 1952. Her husband had predeceased her and no descendants survived her.

At the hearing, evidence was adduced by the respondents to the effect that their father, Franz Buhrandt, was the child of Wilhelmine and Carl Kranske. They maintained that notwithstanding that Franz Buhrandt was born before the marriage of his parents Wilhelmine and Carl Kranske, nevertheless, he became legitimated by the marriage of the parents. The court determined that Franz Buhrandt was the son of Carl Kranske, and that he was legitimized by the marriage of Wilhelmine Buhrandt and Carl Kranske. The appellant, while conceding that Franz Buhrandt was the son of Wilhelmine Kranske, born out of wedlock before her marriage to Carl Kranske, contends that the evidence does not sustain the court's finding that Carl Kranske was the father of Franz Buhrandt. Appellant also submits that there is no proof of the law of Germany with respect to the legitimation of a child born before marriage when its parents marry.

Respondents also maintain that had the court not found that Franz Buhrandt was the legitimated son of Carl Kranske, nevertheless, upon the record, it must be held that the respondents are next of kin of the half blood of decedent and are entitled to share per capita in decedent's estate under provisions of secs. 237.03 and 237.01 (4), Stats. It is the position of appellant that under the common law and the Wisconsin statutes, an illegitimate is not to be considered as next of kin or a relative of the half blood, and that an illegitimate ancestor, not being a legally recognized member of the families of his natural parents, cannot confer upon his children kinship with the members of such families.

When paternity is at issue in a judicial proceeding for the determination of pedigree or heirship, it need be proven only by a preponderance of evidence. There is no requirement that it be proven by evidence establishing it beyond a reason-

able doubt nor by evidence clear and convincing beyond reasonable controversy. *Smith v. Smith* (1909), 140 Wis. 599, 602, 123 N. W. 146.

In a trial to the court, findings of fact will not be set aside on appeal unless they are contrary to the great weight and clear preponderance of the evidence. *Estate of Eannelli* (1955), 269 Wis. 192, 203, 68 N. W. (2d) 791.

Foremost amongst the issues confronting us is that concerning the court's finding that Franz Buhrandt was the son of Carl Kranske. The question presented is whether such finding is contrary to the great weight and clear preponderance of the evidence.

Of record there is evidence to the effect that Franz Buhrandt came to the United States from Germany with Hermine Kranske. Augusta Kranske had preceded them. Later, and in a group, came Carl Kranske, and (his wife) Wilhelmine, Alwina (wife of Franz Buhrandt), Emilie Kranske (the decedent), and Otto Buhrandt (one of the respondents). The record is silent as to what the family life of those parties had been in Germany. None of them survives except respondent Otto Buhrandt. There is an abundance of evidence, however, with regard to the activities of said persons and their relations with each other after they came to this country. Augusta settled in Milwaukee and married August Seeger. Hermine settled in Oshkosh and married Henry Kieckhaefer. Franz worked on a farm in Waukesha county. Emilie married Carl Meyer and lived on farms in the town of Vernon and at Spring Prairie. Carl Kranske and Wilhelmine, his wife, lived with Augusta until 1893 when Augusta died, shortly after the birth of appellant. When Augusta died, Franz and his wife, Alwina, were renting a 40-acre farm in Waukesha county and had six children. Carl and Wilhelmine Kranske and Augusta's surviving infant child (appellant), went to live on the farm with Franz. They stayed there three years and then moved to the farm home of

decedent in the town of Vernon, Waukesha county. Decedent and her husband, Carl Meyer, later moved to Spring Prairie. Carl and Wilhelmine Kranske made their home with decedent until they died. Appellant, Theodore C. Seeger, was brought up in that home. For the last ten years of her life, decedent lived in an apartment in the home of respondent, Otto Buhrandt.

It is not disputed that Franz Buhrandt referred to and called Carl Kranske "Pa." He called Wilhelmine Kranske "Mother." The respondents in family circles and before strangers addressed Carl Kranske as "Grandfather."

Regarding reputation in the family there is testimony of record that all of the respondents were brought up by their parents in the belief that Carl Kranske was their grandfather. Likewise, they were brought up to believe that Augusta, Hermine, and Emilie were their aunts. All of the respondents addressed Hermine and Emilie as "Aunt." Respondent Emma Tess was introduced by Hermine to strangers as her niece. The will of Hermine Kieckhaefer contained a bequest "to my grandniece, Mayvin Tess, daughter of Emma Tess [a respondent]." The decedent, Emilie, frequently referred to Otto, Frank, and Edward Buhrandt (respondents) as her nephews.

No birth certificate of Franz Buhrandt was presented at the trial. It appears that while an effort was made through the United States consular office in Germany and the United States embassy at Warsaw to obtain record evidence of the paternity of Franz Buhrandt, none such could be made available to respondents. Offered and received in evidence at the hearing was a certificate indicating the confirmation of Franz Buhrandt in the Evangelical Lutheran faith on Palm Sunday in 1868 at Dzincelitz which was located in the province of Pommerania and which is now in the area under Polish administration. With respect to the use by Franz of the surname Buhrandt and not Kranske, the evidence of Attor-

ney Herbert Spenner was admitted at the hearing. Mr. Spenner was born in Germany and practiced law there before coming to the United States in 1949. He graduated from the Law School of the University of Wisconsin after coming to this country, and practices law in Milwaukee. He is identified with Attorney Eugene Wengert, who represents the German consul in Chicago. Mr. Spenner testified that it is a custom in Germany that a child shall be baptized very soon after its birth. An illegitimate child is baptized in the name of the mother. In the event that the father of a child born out of wedlock marries the mother after the baptism, the child continues to bear the surname of the mother unless the parents obtain a change of name for the child from a court of guardianship. The witness stated that such proceeding "is quite an amount of red tape, through which parents don't like to go." The witness also testified that when the surname of the child is not changed by such official proceeding, the child, according to the religious practice, must be confirmed in the name appearing on the baptism certificate. The marriage of the parents does not *per se* effect the change of name of a child born to them before the marriage. Usually after such child has reached "several" years of age, parents do not effect a change of the child's surname. The child is not automatically endowed with the surname of the father when the parents marry.

A prayer book of the decedent, Emilie Engelhardt, printed in the German language, and obviously very old, was admitted in evidence at the hearing. On the inside of the covers are written the names and dates of birth of Carl Kranske, Caroline (Wilhelmine) Buhrandt, Augusta Kranske, Hermine Kranske, Franz Buhrandt, and decedent's name, Emilie Kranske. Also admitted in evidence is a copy of a Bible (printed in the German language with indication of publication in 1883) which apparently was the property of Franz and Alwina Buhrandt. Listed therein are the names

and dates of birth of Franz and Alwina Buhrandt and their children. Alwina gave birth to a boy child previous to the time of her marriage to Franz. That child was given her maiden surname. He is still living and still bears that name. The name of that child is not written in the Bible. That child did not come to the United States with Alwina. He never lived with Franz Buhrandt and today makes no claim that Franz was his father.

Carl Kranske died on February 4, 1901. His obituary published in the East Troy News two days after his death contained the statement that the deceased "leaves surviving him his wife and two daughters, several children having predeceased him in death." Augusta died in 1893. Franz Buhrandt died on October 27, 1900. ·

Permitted in evidence and over objection was the testimony of respondent, Otto Buhrandt, regarding a conversation which he had with Hermine Kieckhaefer in her home at Oshkosh in 1917 or 1918 while he and his wife visited there. Specifically he stated as follows:

"*Q*. Will you tell us what that conversation was you had with Aunt Kieckhaefer at that time? *A*. I knew there were two different names, and how they came I never knew, and she looked so much like my father that I asked her whether she was my father's right sister, just that way. She says, 'Why, yes. What makes you ask that?' I says, 'Her name was Kranske and my father's name was Buhrandt.' Then she says, 'He always called the old folks mother and father.' She says, 'Mother and father had Franz before they were married, and shortly after he was baptized with the name Franz Buhrandt, they were married.' "

Ella Buhrandt, wife of Otto Buhrandt, testified that she overheard the conversation referred to above between her husband and Hermine Kieckhaefer, but did not participate in the conversation. In response to a question as to what she had overheard, she stated:

"Well, Otto asked Mrs. Kieckhaefer, Hermine, if she was a right sister to Otto's dad. She said 'Yes.' Then she says, 'Why do you ask?' Otto says, 'Because they have two different names.' She said that mother and father had Franz before they were married, and they baptized him Buhrandt after his mother's name."

The court ruled against the admission of the testimony of Gertrude Baas who had been a neighbor of Emilie Engelhardt for about ten or eleven years before Mrs. Engelhardt's death. The witness testified that the deceased had told her that the deceased had not adopted Theodore C. Seeger (appellant) because she wanted the others to share alike.

Appellant maintains that much of the evidence above set forth inferentially favors his position in the cause. He points to other items of record in substantiation of his claim that the evidence which is of greater weight and which is more convincing, is on his side.

Appellant directs attention to the death certificate of Franz Buhrandt on file in the office of the register of deeds of Waukesha county, which was admitted as an exhibit at the hearing. In said certificate the mother is designated as Minnie Buhrandt. The father's name is indicated as ———— Buhrandt.

At the hearing, appellant called respondent Otto Buhrandt as his own witness. Over objection he elicited testimony from the witness regarding a conversation that the witness had with decedent. Otto Buhrandt testified that he had asked Emilie Engelhardt how it was that her name had been Kranske before her marriage and that the witnesses father's name was Buhrandt. The decedent replied that "Mother wanted that name, so she named it Buhrandt."

Appellant Seeger testified to a conversation which he overheard between his wife and the decedent at an unspecified time in his home at North Prairie regarding the paternity of Franz Buhrandt. Seeger's wife was not living at the time

of the hearing of this cause. At the examination Seeger stated that he had not participated in this conversation. The record reflects the following:

"*Q*. Will you please tell the court what that conversation was? . . .

"*Q*. Between your wife and Emilie? *A*. They was sitting by the table one night looking through the family album. My wife says about this two different names, Kranske and Buhrandt. She asked her if her mother ever was married once before. She said, 'No.' Then she brought this up and asked her and she said it was Buhrandt because about the soldier boy.

"*Q*. Tell the court what your aunt said. *A*. She said soldier boys come to town and she got acquainted with a soldier boy and had this child. A Prussian soldier.

"*Q*. Was there anything further to this conversation? *A*. Not that I know of.

"*Q*. Was there any indication in that conversation whether or not that boy, that soldier boy, was Mr. Kranske? *A*. No, but she did say this boy, she didn't know who he was at the time, and he was higher up than she was and so he didn't want to marry her. That was all.

"*Q*. In other words the gist of that conversation was that . . . *A*. She told my wife right in my own home.

"*Q*. . . . that your grandmother, Wilhelmine Buhrandt, had a child by a Prussian soldier boy, and he refused to marry her? *A*. Yes."

Previous to the hearing, Theodore C. Seeger had been examined adversely before a court commissioner. After he had testified at the hearing regarding the conversation between his wife and the decedent as above, he was confronted with testimony given by him at the adverse examination to the effect that he had participated in the conversation referred to. He admitted that he had participated in the conversation. While the court at the hearing had permitted the testimony of Seeger with reference to the matter, it excluded the same from consideration in its determination.

Appellant Seeger at the hearing was asked on direct examination four times whether or not he had overheard any converation between the decedent and her husband relative to her relationship to Franz. His first answer was that he heard them talk about it but he did not remember what they said. His second answer to the identical question was that he never heard any such converation. After the question had been put to the witness the third time, respondents objected for the reason that the question had already been answered, but the court allowed appellant to proceed. In reply to the question when asked the fourth time, appellant stated that the decedent and her husband had said that Franz was the decedent's half brother.

In further support of his position appellant directs attention to the will of Hermine Kieckhaefer wherein said testatrix, beside making a bequest to the grandniece, Mayvin, also left legacies to persons designated grandsons, who actually were not such, but who were children of a son of her husband born of a former marriage.

In furtherance of their position respondents point to the petition for administration in this estate, which was signed by appellant under oath, and wherein the appellant and respondents are all designated in the printed form as "next of kin and heirs," and are specifically designated in writing after their names as "nieces" and "nephews."

At the hearing appellant called Emil Pahnke as his own witness. Three times on appellant's behalf the question was asked of Pahnke as to whether he had not known for a long time that Franz was only a half brother of the decedent. Each time the witness replied that he did not know about such matter.

It was for the court to draw the reasonable inferences from the evidence that had been presented. A conclusion of fact may be drawn from a preponderance of probabilities in its favor.

"On a trial without a jury, the court is entitled to consider all the evidence and to draw therefrom such inferences as are reasonable and proper under the circumstances, even though another inference equally reasonable might also be drawn therefrom. The weight of inferences and of the explanation offered to meet them is for the determination of the court when it is the trier of the facts. The question of the credibility of witnesses is addressed to the court sitting as a jury, who is not required to accept the testimony of a witness deemed unreliable, although it may be uncontradicted." 53 Am. Jur., Trial, p. 780, sec. 1123.

"In determining the weight of the evidence or its effect in inducing belief, consideration should be given to all of the evidence, its reasonableness in view of surrounding circumstances and inherent probabilities, the existence or lack of corroboration, the accuracy and truthfulness of the witnesses, and all attendant and relevant facts accompanying the admission of the evidence; . . ." 32 C. J. S., Evidence, p. 1068, sec. 1031.

In order to entitle one to a finding in his favor based on preponderance of evidence, the evidence must not only be of greater convincing power, but it must be such as to satisfy or convince the mind of the trier of the fact of the truth of such party's contention. *Speakes L. & C. Co. v. Duluth St. R. Co.* (1920), 172 Wis. 475, 485, 179 N. W. 596.

A finding is against the weight of the evidence when the evidence is insufficient to sustain it.

Tested in the light of these principles, we are constrained to determine that the court's finding with respect to the paternity of Franz Buhrandt is not against the weight of the evidence.

Under an exception to the hearsay rule, "declarations may be admitted in evidence to prove family tradition or pedigree, the ground for the admission thereof being the supposed necessity of receiving the statements in order to avoid a

failure of justice, and an assumption that individuals are generally supposed to know and to be interested in those facts of family history about which they converse, and that they are generally under little temptation to state untruths in respect of such matters. Said Lord Eldon: 'Declarations in the family, descriptions in wills, descriptions upon monuments, descriptions in Bibles and registry books, all are admitted upon the principle that they are the natural effusions of a party who must know the truth and who speaks upon an occasion when his mind stands in an even position, without any temptation to exceed or fall short of the truth.' As thus stated, the principle has been recognized by leading American authorities." 1 Jones, Evidence, Civil Cases (4th ed.), p. 582, sec. 312. See also 31 C. J. S., Evidence, p. 970, sec. 227; *Estate of Cogan* (1954), 267 Wis. 20, 23, 24, 64 N. W. (2d) 454.

A declaration of pedigree generally must be made by someone related by birth or affinity to the family concerned. 31 C. J. S., Evidence, p. 976, sec. 229. The declarations of deceased persons may be received if the statements refer to the age, relationship, birth, marriage, death, or legitimacy of persons who are related by blood or marriage to the declarant. 1 Jones, Evidence, Civil Cases (4th ed.), p. 584, sec. 312.

In the case at bar we are concerned with the declarations of the decedent, Emilie Engelhardt, addressed to appellant, Theodore C. Seeger, and to the respondent, Otto Buhrandt; also with the declaration addressed by Hermine Kieckhaefer to respondent Otto Buhrandt in the presence of Ella Buhrandt; also with the declaration of the decedent to the witness, Gertrude Baas.

Objections to testimony with respect to such declarations were based in part on the ground that they involved communications with deceased persons, and that they are prohibited under provisions in sec. 325.16, Stats.

Sec. 325.16, Stats., provides in part:

"No party or person in his own behalf or interest, and no person from, through, or under whom a party derives his interest or title, shall be examined as a witness in respect to any transaction or communication by him personally with a deceased . . . person in any civil action or proceeding, in which the opposite party derives his title or sustains his liability to the cause of action from, through, or under such deceased . . . person, . . . unless such opposite party shall first, in his own behalf, introduce testimony of himself or some other person concerning such transaction or communication, and then only in respect to such transaction or communication of which testimony is so given or in respect to matters to which such testimony relates."

It is to be observed that the statute does not bar all parties and witnesses from testifying as to transactions or communications with a deceased person, but provides that no party or person in his own behalf or interest shall be examined as a witness in respect to any transaction or communication by him personally with the deceased person.

It seems clear that in the instant matter appellant Seeger and respondent Otto Buhrandt each claim interest in the decedent's estate "from, through, or under" the decedent, and that they were incompetent to testify with respect to discussions that they had with her regarding matters concerning which the result of the issue here depends. Were they not so interested, the restriction of the statute would not have applied to them. The restriction, however, did not bar the testimony of Gertrude Baas. She was not incompetent to testify under sec. 325.16, Stats., nor was her testimony incompetent as impinging upon the rule regarding declaration of pedigree. It is to be noted that hearsay testimony as to pedigree is not confined to ancient facts; it extends also to matters which have recently transpired; and it is admissible although there may be living witnesses who might be called

to testify to the disputed fact. 1 Jones, Evidence, Civil Cases (4th ed.), p. 588, sec. 314. Had her testimony been ad-mitted, and had it been deemed credible, manifestly, its inclusion would have inured to the benefit of the respondents.

The court when formulating its decision, disregarded the testimony of appellant Seeger with reference to the declaration by the decedent expressed in a conversation, in which (as the court found) Seeger participated and which he influenced. Since the respondents, including Otto Buhrandt, had not introduced evidence with reference to any communication with the deceased regarding the paternity of Franz Buhrandt, in other words, since there was no waiver by respondents, it was error to have received in evidence, at the instance of appellant, the testimony of Otto Buhrandt regarding his conversation with the decedent as to Franz Buhrandt's paternity. The testimony of Seeger and Otto Buhrandt regarding conversations with decedent as to the paternity of Franz Buhrandt was proscribed under sec. 325.16, Stats. The exclusion of Otto Buhrandt's testimony in this particular would have favored respondents.

Appellant objected to the admissibility of the testimony of Otto Buhrandt regarding his conversation with Hermine Kieckhaefer. The appellant assigns as error the court's ruling that such evidence was admissible. It is plain that the information elicited by the examination in question pertained to pedigree, and was within the realm permitted as to declaration of pedigree. While it cannot be held that any of the respondents obtained an interest to their present claim directly "by, through, or under" Hermine Kieckhaefer, it does appear that their claim is based indirectly upon the fact that Hermine Kieckhaefer is deceased. Had she not predeceased the decedent, she would have been an heir of decedent. Were it to be held that Otto Buhrandt was incompetent under sec. 325.16, Stats., to have testified with respect to the matter, and that his testimony in such regard was to be eliminated from consider-

ation, it appears, nevertheless, that the court's decision with respect to the issue would not have been changed. Objection had not been interposed regarding the testimony of Ella Buhrandt. In substance it was identical with that of Otto Buhrandt. Obviously the court treated it as credible. It was a proper factor in the determination of the cause.

No objection had been made to the competency of the appellant to testify with respect to conversations between the decedent and her first husband which he overheard, but in which he took no part. The credibility of that testimony was peculiarly for the court.

We have examined carefully the other rulings upon evidence to which exception is taken, but find no prejudicial error.

The law of Germany as it existed in 1854–1861 with respect to the question as to whether a child born before marriage acquired the status of legitimacy when its parents married, was not established at the hearing. Appellant argues that were it to be presumed that the law in Germany was the same as that in Wisconsin at the time, then Franz Buhrandt would not have become legitimated merely by virtue of his parents' marriage, since the common law, which did not recognize legitimation through such process, prevailed here.

Respondents contend that the status of a child for the purpose of sharing in the distribution of personal property, is to be determined by the law of the domicile of the deceased. They maintain that since the deceased was domiciled in this state at the time of her death, sec. 245.36, Stats., controls.

Sec. 245.36, Stats., provides:

"In any and every case where the father and mother of an illegitimate child or children shall lawfully intermarry, except where the parental rights of the mother were terminated prior thereto, such child or children shall thereby become legitimated and enjoy all the rights and privileges of legitimacy as if they had been born during the wedlock of their

parents; and this section shall be taken to apply to all cases prior to its date, as well as those subsequent thereto; provided, that no estate already vested shall be divested by section 237.06 and sections 245.12 to 245.38. The issue of all marriages declared null in law shall, nevertheless, be legitimate."

While there is authority to the contrary, nevertheless, in view of sec. 245.36, Stats., we are disposed to adopt the principle that the status of a child, for the purpose of sharing in the distribution of personal property, is to be determined by the law of the domicile of the deceased, and that if he is legitimate by the law of the deceased's domicile, he may take, even though illegitimate elsewhere. See 11 Am. Jur., Conflict of Laws, p. 323, sec. 23. It is to be observed that the statute specifically declares that its provision shall apply to cases prior to its date. The statute is clearly applicable to the situation of the paternal ancestor of the respondents. The court's finding that Franz Buhrandt became legitimated upon the marriage of his parents, was correct.

Since the court's findings of fact and conclusions of law are sufficient to sustain the judgment, we consider that it is unnecessary to determine the other issues presented upon the appeal.

*By the Court.*—Judgment affirmed.