ESTATE OF KOMARR: VARGO, Appellant, v. BUBAN and another, Respondents.

*No. 424. Submitted under sec. (Rule) 251.54 April 10, 1975.— Decided May 6, 1975*

(Also reported in 228 N. W. 2d 681.)

474

For the appellant the cause was submitted on the brief of *Eugene A. Kershek,* attorney, and *Leonard W. Schultz* of counsel, both of Milwaukee.

For the respondents the cause was submitted on the brief of *John D. Morrisey* of Milwaukee.

HANLEY, J.  Two issues are presented on appeal:

1. Did the trial court commit prejudicial error in admitting testimony over objections as to the competency of the witness and the hearsay rule?

2. Is the 1920 adoption proceeding void by virtue of jurisdictional defects and fraud practiced on the court?

*Admission of evidence.*

Kathleen Buban testified that she is the niece of Evelyn Komarr and that Evelyn's only child, to her knowledge, is George Vargo. No parents, brothers or sisters of the deceased were living at the time of her death. Steve Vargo and herself are the only surviving children of the deceased's brother and George Vargo is the sole surviving son of Theresa. The proof of heirship form was offered into evidence and objected to on the basis of the incompetency of the witness under sec. 885.16, Stats., and the

hearsay rule. The objection was sustained as to the form being offered into evidence but overruled as to the witness' competency.

On cross-examination, Kathleen stated that her knowledge of George Vargo being the only son of Evelyn Komarr was based on conversations with her mother, her brother, her Aunt Theresa and Mrs. Komarr and at least some of the answers were communications with Mrs. Komarr. Counsel for George Vargo then moved to strike all of her testimony on the basis of the hearsay rule and that she was incompetent to testify to communications with the deceased. The motion was denied.

Steve Vargo then testified that he was Evelyn's nephew and that George Vargo was her son, but that Theresa was George's "adopted mother." He further testified he knew George Vargo all his life and first knew him in Milwaukee, Wisconsin, when George lived with Theresa and Marko Kapitanich in the same neighborhood as Steve. George was then called "Teddy" and he called Theresa "Ma." Theresa took George with her when she "split up" with Marko Kapitanich. At times, Steve lived in the same house as George in Milwaukee and Detroit. On cross-examination, he stated that Theresa left Marko Kapitanich in 1922 or 1923. She later married Dan Masich. Steve stated that his knowledge of George's adoption was based on conversations with others, including George Vargo himself. Answers to certain questions related back to conversations with Mrs. Komarr. Following redirect examination, counsel for George Vargo moved to strike his testimony on the basis of the hearsay rule and his incompetency to testify as to conversations with the deceased pursuant to sec. 885.17, Stats. This motion was denied.

After being called adversely, George Vargo testified he was born in Chicago on March 12, 1914, to Evelyn Komarr, then Vargo. Theresa was his maternal aunt and

he lived with her. The first time he lived with her, as far as he could remember, was in 1920. He did not recall ever having been called Kapitanich. His first recollection of living anywhere was in 1921, when he was living in Detroit and did not remember living in Milwaukee. He only lived with his natural mother when she lived with Theresa for a short time and in 1964 and 1965, when he was Mrs. Komarr's guardian and conservator.

Mary Kramarich, the mother of Steve Vargo and Kathleen Buban and Mrs. Komarr's sister-in-law, testified she knew Evelyn all her life. She testified that she visited Evelyn in jail in Chicago in 1912, and Evelyn was pregnant. When George Vargo was three months old, Evelyn brought him up to Mary in Milwaukee. At that time, George Vargo was called Theodore Vargo. He lived with her for eighteen months but she did not know where Evelyn was at this time. George was then put in an orphanage by Theresa. About two years later, George went to live with Theresa, Mary Kramarich's other sister-in-law.

In 1920, Evelyn took George away from Theresa for three months but he went back to Theresa after that. Marko Kapitanich and Theresa adopted Theodore Vargo in Milwaukee. Theodore Vargo and George Vargo are the same person, and after the adoption he was known as Theodore Kapitanich.

During direct examination of this witness, numerous objections were made on hearsay and competency grounds.

On cross-examination, Mary Kramarich admitted signing an affidavit that Evelyn Komarr is survived by her son, George Vargo. She stated that Theresa lived in Milwaukee until 1923. On December 5, 1919, Theresa married Ignatz Sandolich and divorced him on September 20, 1922. Prior to that, Theresa lived with Marko Kapitanich but never married him. Before Marko,

Theresa had lived with or married nine other men. The last one prior to Marko Kapitanich was in 1917 or 1918.

George Vargo was then called on his own behalf. A birth certificate, certified to by Theresa Masich as his maternal aunt in 1941, was received in evidence. This was obtained after his original birth certificate could not be located in Chicago. George testified he first learned of the alleged adoption and the name of Kapitanich in 1970.

The records the court took judicial notice of were an adoption proceeding from 1920, and a 1923 divorce proceeding which both involved Marko and Theresa Kapitanich. The 1920 adoption proceeding involved a petition by these two, as husband and wife, for the adoption of Theodore Vargo. Following published notice, the court ordered that Theodore Vargo be deemed the child of the petitioners on March 26, 1920. The court found that Eva Vargo, Theodore's natural mother, had neglected and abandoned him. The divorce matter was commenced by Marko Kapitanich and on June 6, 1923, the court made findings of fact and conclusions of law to the effect that Marko and Theresa were husband and wife; that there are no issue of the marriage; and that in December, 1920, Theresa, the defendant, deserted Marko without cause, reason or provocation. The court concluded that Marko was entitled to a divorce.

Received into evidence were copies of matters before a Michigan court in a divorce proceeding in 1922. The judgment granted Theresa Sandolich a divorce from Ignatz Sandolich on September 20, 1922. In the signed complaint dated July 12, 1922, Theresa stated that she married Ignatz Sandolich on December 5, 1919, that she lived continually for over two years in Michigan and that there is one child of a former marriage, George Sandolich.

Counsel for George Vargo objected to Mary Kramarich, Kathleen Buban and Steve Vargo testifying as to com-

munications with the deceased on the basis that they were incompetent to do so under sec. 885.16, Stats. That section provides, in pertinent part, as follows:

"No party or person in his own behalf or interest, and no person from, through or under whom a party derives his interest or title, shall be examined as a witness in respect to any transaction or communication by him personally with a deceased or insane person in any civil action or proceeding, in which the opposite party derives his title or sustains his liability to the cause of action from, through or under such deceased or insane person . . . unless such opposite party shall first, in his own behalf, introduce testimony of himself or some other person concerning such transaction or communication, and then only in respect to such transaction or communication of which testimony is so given or in respect to matters to which such testimony relates. . . ."

As to Mary Kramarich, the statute does not apply because she does not have the necessary disqualifying interest. In *Johnson v. Mielke* (1970), 49 Wis. 2d 60, 74, 181 N. W. 2d 503, this court said:

". . . Earlier cases of this court have said that the true test of the disqualifying interest of the witness is whether he will gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action. *Will of Williams* (1950), 256 Wis. 338, 350, 41 N. W. 2d 191; *Estate of Novak* (1923), 181 Wis. 16, 18, 193 N. W. 1000."

In that case, it was held that a witness could testify as to a savings account in which his elderly mother-in-law would have an interest, but in which he did not, but he could not testify as to the creation of joint savings accounts in his name and that of the deceased and the transfer of real estate to him by the deceased.

In *Estate of Nale* (1974), 61 Wis. 2d 654, 659, 660, 213 N. W. 2d 552, it was held that this statute did not

make a daughter incompetent to testify because she had no direct interest in her mother's claim.

". . . Any pecuniary interest that she might have had is too remote and speculative to bring her within the restrictions of the dead man's statute."

Likewise, the claim by George Vargo that Mary Kramarich has an interest because of her "maternal devotion to the pecuniary interest of her daughter . . . and her son" is too remote and speculative to bring her within the statute's restrictions.

Kathleen Buban and Steve Vargo would be incompetent to testify as to any communications with Evelyn Komarr, however. They argue that pedigree testimony may be an exception to the dead man's statute as well as the hearsay rule. *See:* 3 Jones, *Evidence* (6th ed.), p. 637, sec. 20.23. However, the Wisconsin case law is to the contrary. In *Estate of Engelhardt* (1956), 272 Wis. 275, 75 N. W. 2d 631, there was an appeal from a decision as to the persons constituting the heirs at law of the deceased. Two of the parties claiming interests in the estate testified as to declarations made by the deceased to them regarding matters of pedigree. This court said (p. 289) :

"It seems clear that in the instant matter appellant Seeger and respondent Otto Buhrandt each claim interest in the decedent's estate 'from, through, or under' the decedent, and that they were incompetent to testify with respect to discussions that they had with her regarding matters concerning which the result of the issue here depends."

Under the ruling in *Engelhardt* it was improper to receive the testimony of Kathleen Buban and Steve Vargo as to any communications with Evelyn Komarr. However, there is sufficient competent evidence to support the trial court's order if the adoption is valid. Steve Vargo testified that George Vargo said that he was adopted. Also, Steve Vargo and Mary Kramarich testified that George Vargo is the same person who was once

known as Theodore Vargo and Theodore Kapitanich. The court took judicial notice of the records as to an adoption proceeding in which Theodore Vargo, the son of Eva Vargo, was adopted by Marko and Theresa Kapitanich in March of 1920.

In *Estate of Cogan* (1954), 267 Wis. 20, 23, 64 N. W. 2d 454, this court said:

". . . It has been held many times that the admission of incompetent evidence in a trial to the court is not a ground for reversal if there is sufficient competent evidence in the record to sustain the court's finding. . . ."

The crucial question in this case is whether George Vargo was adopted by his aunt. The rights of an adopted person to inherit from one who dies intestate are determined by statute.

"The question is one of statutory construction. The statutes which control are those in force at the time of the death of the intestate. *Estate of Hood* (1931), 206 Wis. 227, 239 N. W. 448. . . ." *Estate of Ries* (1951), 259 Wis. 453, 455, 49 N. W. 2d 483, 50 N. W. 2d 397.

The statute in effect at the time of Evelyn Komarr's death was sec. 48.92, Stats. 1967, which provided in part:

"(2) After the order of adoption is entered the relationship of parent and child between the adopted person and his natural parents, unless the natural parent is the spouse of the adoptive parent, shall be completely altered and all the rights, duties and other legal consequences of the relationship shall cease to exist."

This section does not contain an exception retaining the right of an adopted child to inherit from his natural parents and has the intent of effecting a complete substitution of the rights, duties and other legal consequences of the child and his natural parents with the same rights, duties and legal consequences between the adopted person and the adoptive parents and kin. *Estate of Topel* (1966), 32 Wis. 2d 223, 145 N. W. 2d 162.

Therefore, if George Vargo was adopted, he would not inherit as the son of his natural mother. *See: Estate of Roth* (1964), 25 Wis. 2d 528, 535, 131 N. W. 2d 286. However, as the adopted son of his natural aunt, he would be entitled to inherit from Evelyn Komarr as her nephew.

*Validity of the adoption.*

George Vargo challenges the validity of the 1920 adoption. It is his contention that the adoption is void because of jurisdictional defects and because of fraud perpetrated upon the court. The basis for this contention is the testimony of Mary Kramarich to the effect that Theresa married Ignatz Sandolich in 1919 and the record of the 1922 Michigan divorce proceedings in which Theresa stated in the complaint that she married Sandolich in 1919 and lived with him continuously until 1921.

The adoption order must be presumed to be valid. *See: Zrimsek v. American Automobile Ins. Co.* (1959), 8 Wis. 2d 1, 98 N. W. 2d 383. The rule as to collateral attack upon court judgments was recently restated in *Sinnott v. Porter* (1973), 57 Wis. 2d 462, 466, 204 N. W. 2d 449:

". . . That rule, adhered to in Wisconsin, is as follows:

" 'A judgment rendered by a court having jurisdiction of the parties and the subject matter, unless reversed or annulled in some proper proceeding, is not open to contradiction or impeachment, in respect of its validity, verity, or binding effect, by parties or privies, in any collateral action or proceeding, except . . . for fraud in its procurement.' 49 C. J. S., *Judgments,* p. 792, sec. 401."

George Vargo's contention here goes to both jurisdictional defects and fraud because sec. 4021, Stats. 1919, required a petition for adoption by a married person to be joined by his or her spouse, and Marko and Theresa Kapitanich were allegedly not married to each other although they represented themselves to be before the court.

In *Will of Bresnehan* (1936), 221 Wis. 51, 265 N. W. 93, it was pointed out that adoption proceedings are statutory and, if the statutory prerequisites of jurisdiction do not exist, the court is not authorized to act. This was applied to the requirement that a spouse join in petitioning for adoption by a married person.

In *Becker v. Becker* (1913), 153 Wis. 226, 140 N. W. 1082, this court recognized the validity of common-law marriages entered into by competent parties without witness or ceremony of any kind whereby the parties agreed to take each other for husband and wife and the agreement was consummated by cohabitation and by holding themselves out to the public as married. As of January 1, 1918, however, in order to validly contract for marriage, it became necessary to obtain a marriage license, Laws of 1917, ch. 218, secs. 3 and 4, and, therefore, parties could no longer enter into common-law marriages. However, a valid common-law marriage entered into before 1918 was not affected by this legislation. *See: Estate of Fox* (1922), 178 Wis. 369, 190 N. W. 90.

The trial court recognized that there was an inconsistency as to the whereabouts of Theresa in 1920. It found, however, that Theresa was in Milwaukee in 1920 and married to Marko Kapitanich. That finding is not against the great weight and clear preponderance of the evidence. Here Mary Kramarich testified that Marko and Theresa Kapitanich were living together when she returned from Ohio in 1918. She also testified that Theresa's relationship with Ignatz Sandolich followed that with Marko Kapitanich.

We conclude that there was ample credible evidence of a common-law marriage between Marko and Theresa during which marriage there was a valid adoption of Theodore Vargo by Marko and Theresa and that Theodore Vargo, Theodore Kapitanich and George Francis Vargo are one and the same person. Therefore, the order of the trial court determining heirship must be affirmed.

*By the Court.*—Order affirmed.