AURELIA CALZAFERRI, PLAINTIFF, v. GEORGE J. KAUPER AND PAULINA BOSE, EXECUTORS OF THE ESTATE OF GUSTAV SOMMERMANN, DECEASED, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided December 9, 1959.

*Messrs. Harber & Freesman,* attorneys for plaintiff (*Mr. James A. Major,* appearing).

*Mr. Arthur Knaster,* attorney for defendants.

BROWN, J. D. C. (temporarily assigned). The plaintiff has brought this action against the executors of the estate of Gustav Sommermann for breach of the decedent's contract to pay her for personal services rendered to him and to his wife from June 2, 1952 to June 21, 1958. Three theories of liability are advanced by the plaintiff in the pretrial order—breach of express promise to pay wages, *quantum meruit*, and breach of the decedent's contract to provide wages for her in his will.

The defendants acknowledge that there was a compensable employment during the time and involving the services claimed by the plaintiff. The only issue is as to the nature of the arrangement between the parties. It was founded upon an express promise to pay "wages" in the amount of the reasonable value of her services, according to the plaintiff. She contends that such value was in the amount of $50 per week. Her maximum claim has been fixed at $15,000. The defendants contend that compensation was measured in amount by an understanding as to terms. They insist that the plaintiff is limited by her bargain to accept board and lodging, the sum of $20 in cash per month and a one-third share of decedent's residuary estate as payment in full.

It is undisputed that the plaintiff did receive her board and lodging and the monthly cash payments. It is further agreed that the plaintiff is the residual legatee of one-third of the testator's estate pursuant to his will and codicil probated in the Hudson County Surrogate's Court on or about July 2, 1958.

Did the defendants' decedent expressly agree to do more for the plaintiff than this? Her proof that he did consisted of her own testimony and the testimony of her brother, Julius Calzaferri, in the form of answers to interrogatories and cross-interrogatories taken from him at Frankfurt Am Main, Germany.

The plaintiff's direct examination was carefully limited so as to comply with the proscription of the Dead

Man's Act (*N. J. S. 2A* :81–2) as to conversations with the decedent. She was permitted to establish the time period and nature of her work as well as the factual context in which it was performed. This was consistent with the admission of the defendants in the pretrial order. The first testimony by the plaintiff as to conversations with the decedent was adduced in response to questions on cross-examination. At the end of the trial, the plaintiff was called on rebuttal to testify that Mr. Sommermann expressly promised to have his attorney, the defendant George J. Kauper, take care of the wages for which she asked. The defendants objected to this testimony as being incompetent under the statute. Its competency was urged by the plaintiff on the ground that the door was opened on cross-examination.

The question whether a suing party is made competent to testify as to statements by a decedent because the representative first enters the area through cross-examination of the party appears not yet to have been answered in the decisional law of New Jersey. Aspects of the problem have been touched upon in cases involving limited waiver. Where, for instance, the decedent's representative, during cross-examination of the suing party, elicited a responsive answer regarding a transaction with the decedent, the answer was allowed to stand despite the representative's objection. Such conduct waived the protection of the statute. This was the holding in *Messenger v. Paterson Savings Institution,* 91 *N. J. L.* 654 (*E. & A.* 1917). Proof of the alleged contract was adduced by the testimony of third persons. There was no contention that the waiver opened the door for further direct testimony by the suing party. In *Lowe v. Doremus,* 86 *N. J. L.* 325 (*E. & A.* 1914), a reciprocal situation was presented. The representative there sought to make the suing party's answers to interrogatories evidential despite the bar preventing the latter's direct testimony as to the transactions. The court upheld the right of the estate to do so. The statute, the court said, did not require the representative first to offer himself as a witness

to decedent transactions before calling the suing party as a witness on the subject. Here again there was no issue litigated as to resulting effect upon the statutory bar in general. The party suing in *Ludlow v. Dwyer, 3 N. J. Super.* 1 (*App. Div.* 1949) was improperly allowed to testify on direct examination concerning a transaction with the decedent. He contended that this error was cured by the fact that the representative cross-examined him on his statement. The court held that because the cross-examination was strictly confined to the direct examination it did not constitute a waiver of the objection to its admission. Again the decision stopped short of the question whether a suing party is made competent to testify as to statements by a decedent because the representative has first inquired into the subject through cross-examination. In other words, the representative in *Ludlow* had simply acted to meet the thrust of the adverse case.

What is the rule of law when it is the decedent's representative who first verges into the prohibited area? And what is the consequence when he does so in an instance where the suing party, having complied with the interdiction of the statute, thereafter contends that the door has been opened to his full competency? The opinion in *Ludlow* refers to two foreign decisions in which a dispositive rule is recognized. The first of these authorities is *In re Gochring's Estate,* 263 *Pa.* 47, 106 *A.* 60 (*Sup. Ct.* 1919), in which it was said:

"Where the examination in chief of the witness has been confined to matters occurring after the death, and the cross-examination is extended so as to contain matters occurring in the lifetime, to whatever extent, so far witness is accredited by the opposing party, and because of this he becomes a competent witness in his own behalf as to all such matters. The party responsible for the removal of the disability of the witness is the cross-examining party; he may not remove it for his own purpose and deny to the other party equal share in the resulting advantage. The logic of the rule is that by extending the cross-examination beyond the limit the law prescribes the party so cross-examining makes the witness his own,

and accredits him just as though he had called him in chief in the first instance, without qualification or restriction." (106 *A.*, at *page* 62.)

The other authority so cited is *Jackowska-Peterson v. D. Reik & Sons Co.,* 240 *Wis.* 197, 2 *N. W. 2d* 873 (*Sup. Ct.* 1942). Therein, the court held, consistently with *Ludlow,* that the door was not opened by cross-examination which did not extend beyond the scope of testimony in chief. The opinion, however, recognizes the rule that if the cross-examination in any way broadens the extent to which the witness first testified, the incompetency is waived.

These decisions reflect the prevailing view which has been stated as follows:

"The general rule is, subject to certain qualifications, that the cross-examination of a witness concerning transactions or conversations with a deceased party, concerning which the witness did not testify to on the direct examination, amounts to a waiver of the incompetency of the witness with respect to such matters and renders him competent to testify thereto as against the examining party." 58 *Am. Jur. sec.* 359, *p.* 212.

The rule is annotated in 64 *A. L. R.* 1158, 107 *A. L. R.* 487, and 159 *A. L. R.* 411.

Accordingly the testimony of the plaintiff on cross-examination and on rebuttal is properly part of her proof in the present case. Giving full effect to all of the plaintiff's testimony what does it demonstrate? She testified that the first conversation with the decedent about "wages" occurred when she asked for them in the middle of 1954. She did not attribute to the decedent any commitment at the time. She stated that about six months thereafter Mr. Sommermann read to her his will of January 30, 1954 (defendants' Exhibit 1) in which she was named as one of three equal residuary legatees. On this occasion (about the beginning of 1955) she mentioned to him that there was nothing in the will about her wages. At the same time, she pointed out to him that she ran the risk of a depletion of the estate through the expense of a protracted illness which he might

suffer. He agreed, she contends, and he said he would fix an amount for her through his attorney, Mr. Kauper, who would take care of it. Although she never complained to Mr. Kauper about the will provisions she did ask him to do something about her wages.

The foregoing constitutes all of the plaintiff's testimony. The only expression of intention she attributes to the decedent is his declaration that he would attend to the matter of providing a wage amount in his will. She does not contend that a specific amount was demanded or promised. Indeed, she admitted on cross-examination that no demand was ever made by her. As far as the plaintiff's testimony is concerned, her case for breach of contract, therefore, depends upon an agreement made no earlier than the beginning of 1955. No conduct of the decedent before that time is claimed to have created his obligation to do more for the plaintiff than he had done. The plaintiff does not assert that anything had happened before to suggest an understanding inconsistent with the then existing arrangement. If she had already worked for two and a half years and for seven days a week, as she says, before the question of "wages" arose at all it is difficult to understand why the issue was not precipitated before. And there is nothing in her testimony to show that she thereafter pursued Mr. Sommermann about the matter, although she continued in his service for three and a half more years until his death.

The plaintiff's version of the wage contract is not only out of joint with the probabilities but its persuasive force is substantially diminished by the testimony of her brother. In cross-interrogatory 14 he was asked about his conversations with the decedent. In answer Mr. Calzaferri testified as follows:

"I made it clear to my uncle that my sister had been working for such a long time already here and had received nothing at all. He said she would get one third of the estate. I explained to him * * * that if he lived much longer, he probably would have to sell one of the houses in order to be able to pay for his living,

and then my sister would at the end receive nothing at all. My uncle understood my points, and he promised to go to the lawyer the next day to settle * * * the matter that my sister would receive a compensation for her services * * *."

Again the obligation of Mr. Sommermann is alleged solely in terms of his declared intention to settle the wage matter with his lawyer. Mr. Calzaferri, however, sets the time as being the second week of November 1956. Nearly two years had passed since the decedent allegedly made a similar statement to the plaintiff. Her brother says she was present at the conversation. But his account of it does not include any mention by her of a prior commitment on the part of Mr. Sommermann as would be expected if such were the fact. Mr. Calzaferri's report of the discussion fairly implies that the inequity in his sister's situation was being made known to the decedent for the first time.

Mr. Kauper testified for the estate. He stated that he had seen the plaintiff in his office a total of three times during Mr. Sommermann's lifetime. On these occasions discussion with the plaintiff related to a change in the 1954 will which resulted in the codicil of June 18, 1957. He saw her about four or five times after the death of Mr. Sommermann with respect to rent receipts. Never did the plaintiff claim a right to wages. He had no knowledge of such a claim until it was formally filed with the estate about six months after the date of death.

After a consideration of all the plaintiff's evidence I do not believe that it preponderates to show an express promise by the decedent to pay wages to her or to provide for them in his will. The plaintiff's dealings with the decedent as reflected in her testimony and in the testimony of Mr. Kauper were such as to convince me that she was satisfied to render her services in consideration of board and lodging, the monthly payments, the opportunity to do outside work and the testamentary provision which evolved in 1954. I believe that the foregoing constituted a form of compensation and the total compensation which Mrs. Calzaferri

expected and for which she was willing to continue in the service of Mr. Sommermann. When she accomplished the benefit conferred by the codicil of June 18, 1957 she acted to protect her bargain. Whether the arrangement was provident or improvident is immaterial. It was nevertheless a contractual arrangement which emerged from an established course of conduct. The parties shaped the terms of their transaction. Despite the contentions in the pretrial order concerning a *quantum meruit* the facts adduced on the trial do not support that theory.

I find as a fact that neither Mrs. Calzaferri nor her brother raised the issue of compensation with the decedent as they contend they did. I also find that the plaintiff and the decedent arrived at a mutual understanding concerning the full terms of her remuneration for services when she learned of the provision in his will. According to her own testimony it appears that she continued to render her services to the decedent for three and a half years thereafter and until his death without further mention to him of any expectation that she would receive more. And although she saw Mr. Kauper from time to time after Mr. Sommermann's death she did not submit any oral claim to Mr. Kauper. I am convinced that the *quantum meruit* theory cannot stand on the facts. I find the proof of the compensation agreement between decedent and Mrs. Calzaferri implicit in her own account of her conduct and transactions with the decedent.

In the decisions cited by the plaintiff in her brief it was established, as in the present case, that there was a compensable employment. But in none of the authorities referred to was there the fact situation present here. In *Cerria v. DeFazio*, 19 *N. J. Super.* 482 (*App. Div.* 1952) the decedent made no payments to the plaintiff during his lifetime; he had no compensation understanding with her. Her right to payment was implied in his indefinite statement that he would provide for the plaintiff in his will. He failed to leave her anything and so the dismissal of her

count on a *quantum meruit* was reversed. *Steffler v. Schroeder,* 12 *N. J. Super.* 243 (*App. Div.* 1951) was a case where again the plaintiff had received nothing from the decedent during the latter's lifetime except the assurance that an unspecified provision would be made in the plaintiff's will. There was a bequest of $200 and a wristwatch. Because the implied agreement to pay the reasonable value of the services was not performed, the plaintiff was allowed to enforce her claim on a *quantum meruit.* Although in this instance the promise to leave something was performed, the inadequacy of the bequest entitled the plaintiff to reject it. A third type of factual situation was presented in the case of *Anderson v. Searles,* 93 *N. J. L.* 227 (*E. & A.* 1919). There the testator expressed an intention to leave a certain fraction of his estate to the plaintiff. He did not do so and the legacy of $200 was held to be no bar to a *quantum meruit.*

▇ The foregoing authorities annotate the general proposition that an obligation to compensate in an unarticulated amount implies the obligation to pay by will or otherwise what the services are reasonably worth. But where, as here, the parties spelled out their agreement as to compensation and where their understanding included the promise of a specific testamentary provision and the promise was performed, there is presented a fact situation not covered by the foregoing cases. In such a situation there cannot be a *quantum meruit.*

The written opinion of the court filed following the trial of the action has been amended herein to deal with the argument on the hearing of plaintiff's motion for a new trial, which motion is hereby denied.

Judgment for the defendants.