Krantz, Respondent, vs. Krantz, Administratrix,
Appellant.

*March 8—April 11, 1933.*

250

For the appellant there was a brief by *Curran & Sher* of Superior, and oral argument by *Robert E. Sher*.

For the respondent there was a brief by *Cadigan & Cadigan* of Superior, and oral argument by *Charles P. Cadigan*.

FRITZ, J. Plaintiff was injured at about 5 o'clock a. m. on August 5, 1931, when an automobile in which he was a passenger, and which was being operated by John Krantz, ran off the road into a ditch and capsized. John Krantz was killed. Subject to objection by defendant's counsel that, as John Krantz was dead, plaintiff was incompetent under sec. 325.16, Stats., to testify in relation to John Krantz's movements and acts in operating the automobile, plaintiff was permitted to testify as to what he observed in the following respects: John Krantz was driving the automobile at thirty-five to forty miles per hour on a good graveled highway. As it was traversing the last 300 feet preceding the place of the accident, it began to swerve from side to side, and plaintiff noticed that John Krantz was asleep and resting on his right arm, which was on the steering wheel. He woke up when the automobile was close to a ditch on his left side, and immediately set the brake and turned the car abruptly to the right, whereupon it went into the ditch on that side, and rolled over three times. The jury found that plaintiff's injury was caused by John Krantz's negligence in managing and controlling his automobile, and in permitting himself to go to sleep; but that plaintiff did not fail to exercise ordinary care for his own safety and did not assume the risk of riding with John Krantz at and just prior to the accident. Judgment for plaintiff was entered on the verdict for the recovery of the damages assessed by the jury.

On this appeal defendant challenges the sufficiency of the evidence to support those findings. Defendant contends that the *res ipsa loquitur* doctrine cannot be relied upon to raise a presumption of negligence in operating an automobile; that as the driver was killed in the accident the law raises a presumption that he exercised due care for his own safety; and that the fact that he fell asleep does not constitute actionable negligence. However, in view of inferences which the evi-

dence reasonably admits of, sufficient facts can be considered established to obviate any occasion for resorting to the *res ipsa loquitur* doctrine, and overcome the presumption that the deceased exercised due care for his own safety. The facts as to the unusual, erratic, and unnecessary course of the automobile, while it was entirely within the driver's power and opportunities to control it, if he had been exercising due care, admit of finding that the accident was caused by his negligence in management and control. There is no proof affording any explanation or excuse as, for instance, the existence of some defect in the highway or automobile, or some sudden emergency, for which he was not responsible.

Bearing on the question of John Krantz's negligence in permitting himself to fall asleep, there was evidence to the following effect: He was thirty-eight years of age. From 3 to 11 p. m. of the afternoon and evening preceding the accident he had been performing his usual work as a railroad car inspector. Then he went home to sleep from 11 :30 p. m. to 3 :30 a. m., when he got up and prepared his breakfast. At 4 a. m. he started in his car, with plaintiff as a passenger, on a fishing trip, and after he drove for about an hour the accident occurred. There was no evidence that he had any fainting spell, or that any unanticipatable mental or physical condition caused him to fall asleep. Under those circumstances, the evidence admitted of finding that he was negligent in permitting himself to fall asleep while he continued to operate his automobile on the highway. As was said in *Bushnell v. Bushnell,* 103 Conn. 583, 131 Atl. 432:

"In any ordinary case one cannot go to sleep while driving an automobile without having relaxed the vigilance which the law requires, without having been negligent. It lies within his own control to keep awake or cease from driving. And so the mere fact of his going to sleep while

driving is a proper basis for an inference of negligence sufficient to make out a *prima facie* case and sufficient for recovery, if no circumstances tending to excuse or justify his conduct are proven." To the same effect see *Devlin v. Morse,* 254 Mich. 113, 235 N. W. 812.

That falling asleep under such circumstances may constitute negligence was also recognized in *Kaplan v. Kaplan,* 213 Iowa, 646, 239 N. W. 682, but in that connection it was held that doing so "does not raise any negligence there may have been in said act to the level of recklessness."

On the other hand, the facts in the case at bar do not warrant holding that the plaintiff was guilty of contributory negligence, as a matter of law, in riding with John Krantz at the time of the accident. Because of substantial differences between material facts in this case and the facts in *Krueger v. Krueger,* 197 Wis. 588, 222 N. W. 784, it cannot be held now, as was held in the *Krueger Case,* that plaintiff, as a matter of law, assumed the risk incident to the driver's falling asleep while operating the car. In the *Krueger Case,* because of the plaintiff's knowledge of "defendant's prior experience as a driver as well as all the facts surrounding the long drive from noon of the preceding day, the loss of sleep, the discomforts of the night preceding the final stage of the journey," it was held that the driver's "dozing at the wheel was reasonably to be expected as an aftermath of the experience which they had all undergone since the preceding noon." No equivalent knowledge as to the driver's condition can be ascribed to the plaintiff herein. True, he knew that John Krantz's working hours as a car inspector were from 3 to 11 p. m. on five or six days a week. But it does not appear that he had any knowledge of the driver's activities during the period which lapsed between 11 a. m. of the day preceding the accident and 4 o'clock the next morning, when plaintiff called at the driver's home and found that he had breakfast ready for them before starting

on the trip. Neither is there any proof which established, as a matter of law, that plaintiff ought to have known that the driver was apt to fall asleep, before plaintiff discovered him in that condition when he noticed the car swerve, just before the driver awoke and the accident occurred.

In that respect there was an issue of fact for the jury. That issue was involved under the fourth and also the eighth questions of the special verdict. Both questions were answered in favor of plaintiff. An error occurred, as defendant contends, in the court's instructions as to the burden of proof under the fourth question. However, in relation to the eighth question, the court gave the following instruction, at the request of defendant's counsel, viz.:

"You are further instructed as follows: There is evidence in this case that John Krantz fell asleep momentarily just before the accident occurred. You are instructed that if the plaintiff, Ernest Elov Krantz, knew or ought to have known that John Krantz worked until late the night before the accident and had had very little sleep before the trip in question began, then plaintiff assumed the risk of injury from any accident caused by the driver falling asleep at the wheel. It is for you to say from the evidence whether or not the plaintiff knew of the situation."

That rightly informed the jury that plaintiff's knowledge in that respect was in issue under the eighth question, and that the jury was to decide that issue in answering that question. The answer which the jury did return to the eighth question under those instructions absolved plaintiff from negligence in that respect. That answer was sufficient to dispose of that issue in plaintiff's favor without relying upon the jury's finding to the same effect in answer to the fourth question. Consequently, even though the latter answer may have been induced by an erroneous instruction, that answer is not needed to support the judgment, and, inasmuch as that answer is not inconsistent with the jury's answer to the eighth question, it can be disregarded as superfluous.

That being true, the fact that the instruction, as to the burden of proof under the fourth question, was erroneous, does not necessitate a reversal and a new trial.

This case again squarely presents the question as to whether a passenger, who did not participate in the operation or control of an automobile at the time of an accident, is competent, notwithstanding the death of the driver, and the provisions of sec. 325.16, Stats., to testify as to his observations of the driver's movements and actions in operating and controlling the automobile. That question was given extended consideration recently in *Waters v. Markham,* 204 Wis. 332, 235 N. W. 797, and *Seligman v. Hammond,* 205 Wis. 199, 236 N. W. 115. There are conflicts in the results at which courts have arrived, under the statutes, on this subject in other states. To some extent those conflicts are due to differences in the wording of the statutes involved. Under sec. 325.16, Wis. Stats., the prohibition as to a party (or other person included in the class described in the statute) testifying is solely that he shall not testify "in respect to any transaction or communication *by him personally with* a deceased or insane person," etc. When due significance is accorded the italicized words, "by him personally with," the transaction meant in that statute is, as we held in *Seligman v. Hammond, supra,* a mutual transaction between the deceased and the witness who survives, in which both—the survivor, as well as the deceased—actively participated. The statute "does not prohibit the survivor from describing an event or physical situation or the movements or actions of a deceased person quite independent and apart and in no way connected with or prompted or influenced by reason of the conduct of the party testifying." *Seligman v. Hammond, supra.* Thus construed, that statute did not bar the testimony of plaintiff as to his observations and description of the physical situation, and the movements and actions of the driver at the time of the accident.

Defendant further contends that John Krantz was instantly killed in the accident in which plaintiff was injured; that since John Krantz was killed at the moment plaintiff's cause of action arose, there was no one in existence against whom plaintiff's cause of action could attach; that consequently there was nothing to survive; and that the survival statutes save causes of action that have already arisen, but do not create causes of action that have not existed before, and there is no statute in this state which creates a cause of action in favor of an injured person where the wrongdoer dies before or at the moment that the cause of action arises. The questions raised by those contentions were considered recently in the case of *Booth v. Frankenstein,* 209 Wis. 362, 245 N. W. 191. In the case at bar, as we held in that case, whether a cause of action in favor of the plaintiff arose and existed against the deceased in his lifetime depends upon whether the plaintiff, prior to the death of the deceased, sustained some injury as the result of negligence of the deceased. If the deceased's death did not antedate the accrual of a cause of action in the plaintiff, then that cause of action was not destroyed by reason of the subsequent death of the tortfeasor. There is no proof that John Krantz died instantly upon the automobile entering the ditch and commencing to capsize. On the other hand, as soon as that occurred, plaintiff was violently jolted and thrown about. He became dazed, and when he regained consciousness, after the automobile had stopped rolling over, he found himself lying on John Krantz, whose body was partly in and partly out of the automobile with his head outside, under the door post. Plaintiff then crawled out and tried to stop a passing automobile. He did not succeed until a second car came along. Mr. Nichols, the driver of that car, stopped and then walked with plaintiff to the wrecked car. Upon looking underneath, Nichols said that John Krantz was dead. Presumably

plaintiff was injured as soon as he was violently thrown about in the automobile when it began to roll over in the ditch, and then a cause of action in plaintiff's favor arose and existed against John Krantz if he was alive. But there is no proof that John Krantz was dead at any particular time prior to the discovery of that condition by Nichols, after his automobile had been stopped by plaintiff. Although it is possible that the death of John Krantz may have occurred some time prior to that discovery, there is no proof because of which it can be held, as a matter of law, that he did die at some prior time. Presumptions do not run backward. When the existence of a person is once established by proof, the law presumes that he continues to exist until the contrary is shown or until a different presumption is raised from the nature of the subject in question. *Rupert v. Chicago, M., St. P. & P. R. Co.* 202 Wis. 563, 568, 232 N. W. 550. It follows that the trial court did not err in holding that plaintiff's cause of action against John Krantz arose and existed prior to the death of the latter.

The question as to the consequences of plaintiff's injury as the result of the automobile accident on August 5, 1931, was complicated by the fact that prior thereto, on September 13, 1930, he had sustained injuries in an industrial accident. Both accidents affected substantially the same parts of his person, and also the same bodily functions. In the period between the two accidents he had been able to work only from November 29, 1930, to December 24, 1930; and his physical condition had been gradually getting worse. While as a result of the first accident he had been confined in a hospital for eleven days, the automobile accident resulted in keeping him in a hospital for seven weeks. There was evidence of substantial increases in the resulting weaknesses and in the impairment of the affected bodily functions; and that he would probably continue to be unable to do the

normal amount of work as a laborer. Although he was but twenty-eight years of age, and his expectancy of life was 36.73 years, he had been awarded only $138 as compensation by the Industrial Commission for thirty-one weeks' disability for the industrial accident. On account of the injury sustained in the second accident, the jury assessed his damages at $1,000 (in addition to $296 for medical and hospital expenses) up to the time of the trial; and at $2,900 for future damages. Those amounts are not excessive unless plaintiff's condition at the time of the trial was due almost entirely to the first accident. Under the circumstances of the case, the question, as to the extent to which the consequences of the injury sustained by plaintiff are attributable to the automobile accident, is so peculiarly for the jury, that we cannot conclude that there is no reasonable basis for the amounts assessed by the jury or that the assessments are excessive.

*By the Court.*—Judgment affirmed.