JACKOWSKA-PETERSON, Appellant, vs. D. REIK & SONS COMPANY and others, Respondents.

*February 9—March 13, 1942.*

*Max Raskin* of Milwaukee, for the appellant.
*D. J. Regan* of Milwaukee, for the respondents.

FOWLER, J.  The plaintiff was injured while attempting to pass a truck stopped in an alley for the purpose of unloading merchandise in an adjacent building.  The driver started the truck while she was passing.  A jury found that the driver

of the truck did not know that the plaintiff was passing the truck and that under the circumstances existing he ought not so to have known. They also found that one Beckman, an employee of the truck driver, who was in the trucking business and engaged in making deliveries of merchandise for customers, was negligent for not warning the truck driver of the plaintiff's position; that the plaintiff was contributorily negligent, and that her negligence was fifty-seven per cent as compared to Beckman's forty-three per cent. Judgment went for the defendants under the comparative-negligence statute, sec. 331.045, which provides that a plaintiff whose negligence is equal to or greater than that of the defendant cannot recover.

(1) The plaintiff claims that she was free from contributory negligence, and that if she was negligent her negligence was less than Beckman's. We have considered the evidence carefully and are of opinion that the findings of the jury must be sustained, both as to contributory and comparative negligence. No useful purpose would be served by detailing the evidence.

(2) The court took evidence of a juror that the apportionment of negligence was arrived at by each juror setting down the figure expressing his opinion of the percentage of the plaintiff's negligence, dividing the aggregate by twelve and taking the quotient as the percentage attributable to the plaintiff and attributing the remaining percentage to the defendant. The court held after taking the evidence that the juror's statement was not receivable to impeach the verdict.

This court held in *Gallaway v. Massee,* 133 Wis. 638, 113 N. W. 1098, that testimony of jurors cannot be received to show a quotient verdict, but appellant contends that the adoption of the comparative-negligence statute has so changed the situation as to require a different rule now. We fail to see any force to this argument. True, the comparative-negligence statute doubles the opportunities for adopting a quotient verdict for while formerly only damages might be so fixed, now

comparative negligence may also be so fixed. But if the reasons for the rule are valid, its validity is not affected by the possibility of the practice being more frequently used. The rule of the *Gallaway Case, supra,* was deliberately and advisedly adopted. We consider it a salutary rule, and adhere to it.

(3) The plaintiff in making her case was permitted to testify, over objection on the ground that the truck driver was deceased, that when she was passing the truck and the driver was mounting the cab she called out to him "Wait," and that the driver when picking her up after she fell said to her "I heard you call." At the close of the trial this evidence was stricken, and the jury were especially instructed that they could not consider it. The reason for striking the evidence and so instructing the jury was that the statement was precluded under sec. 325.16, Stats., as a "communication" with a deceased party. The statute provides that "no party . . . shall be examined as a witness in respect to any transaction or communication by him personally with a deceased . . . person in any civil action . . . in which the opposite party . . . sustains his liability . . . through or under such deceased . . . person, . . . unless such opposite party shall first, in his own behalf, introduce testimony . . . concerning such transaction or communication." It would seem *a priori* that the statements were "communications" between the plaintiff and the party through whom the defendant insurance company and the personal representative of the deceased person sustain their liability.

We stated in *Waters v. Markham,* 204 Wis. 332, 343, 235 N. W. 797, in an automobile collision case of guest against host, wherein our doctrine of assumption of risk by the guest was involved, that "it seems rather clear that the plaintiff herein would be incompetent to testify in this action as to a protest made to the deceased just prior to the accident;" and we held in the opinion, page 344, that receipt of the statement

"whenever I thought he was driving too fast or speeding I objected, of course," was "incompetent, objectionable, and prejudicial," whether made in reference to other trips or to the then instant trip. The statement of the *Markham* opinion has been considered in *Seligman v. Hammond,* 205 Wis. 199, 206, 236 N. W. 115, and *Krantz v. Krantz,* 211 Wis. 249, 255, 248 N. W. 155, and seems to have been there considered as correct as to communications made to the deceased, but as not preventing a plaintiff from testifying to what he observed as to the deceased's manner of driving. We consider that the statements as to what the plaintiff said to the deceased was a "personal communication" and barred by the statute.

The plaintiff contends that the statement "Wait" was a part of the *res gestæ,* and receivable in evidence on that ground, regardless of the statute. A communication between parties is no less a communication because made just prior to an accident. The statement was not a mere exclamation. It was a request. Its nature as a communication is fixed by the following excerpt from the plaintiff's cross-examination:

"*Q.* I understood you to say on direct examination that before the motor started, you had the talk or saw the driver and talked to him? *A.* Yes; I told him to wait.

"*Q.* You say you think he was going up—'Going up?' *A.* Upon the seat and I told him to wait."

Other questions and answers were:

"*Q.* Did you holler when you went down? *A.* I did.

"*Q.* So you hollered twice, then? *A.* Yes, at first I said 'wait.' I didn't holler.

"*Q.* Do you say it [the motor] started suddenly? *A.* I didn't expect it to start when I told him to wait and he listened and looked at me."

The plaintiff claims that defendant's counsel by cross-examining the plaintiff respecting what she had testified to as to communications with the deceased so "opened the door" as to waive the benefit of the statute which he had promptly in-

voked when the plaintiff on her examination in support of her complaint first testified as to such communications. But the statute was not waived unless the defendant "first in his own behalf" introduced "testimony . . . concerning such . . . communication." It seems plain that by so doing the defendant did not "open the door," because the door had been already opened by the plaintiff, and it is also plain that the defendant did not "first" introduce any testimony or invoke any testimony as to such communications. The plaintiff in support of her contention cites *Lamberson v. Lamberson,* 175 Wis. 398, 184 N. W. 708, and *Maldaner v. Smith,* 102 Wis. 30, 78 N. W. 140. The latter case is plainly to the contrary, so far as it is at all in point. In the former the situation as disclosed at pages 409 and 410 of the opinion is so different from the instant situation that we consider the ruling there made that the cross-examination of the plaintiff by the defendant so "opened the door" as to waive the statute and permit the plaintiff to give the entire conversation between plaintiff and his deceased father at the time referred to does not support the plaintiff's contention as to waiver in the instant case. The plaintiff Lamberson in support of his complaint had testified without objection that he was called by his father and handed a contract and examined it. He was then asked if his father asked him to sign the contract. Objection was interposed that he was incompetent to testify because his father had died. Testimony was received "subject to the objection." The defendant on his cross-examination of the plaintiff questioned him as to statements made on his adverse examination before trial taken by the defendant, and finally offered the whole of the adverse examination in evidence. This was held to "open the door" to permit the plaintiff to testify as to the entire conversation between himself and his father. In the instant case the objection to the competency of the witness was interposed before she testified as to any communication between her and the deceased. No questions were asked on

the cross-examination that in any way broadened the extent of the communication to which the plaintiff had "first" testified.

It has been the practice of the circuit courts as far back as the writer's memory runs to permit cross-examination under such circumstances and to rule that cross-examination did not "open" any door unless it went beyond the scope of the inquiry permitted by the court in the first instance. We know of no case other than the *Lamberson Case, supra,* in this court that involves the effect of cross-examination as "opening the door." It was held by this court in *Carpenter v. Ginder,* 1 Wis. *243, decided in 1853, when interest rendered a witness incompetent to testify, that if a party examined a witness incompetent from interest to testify and the court permitted him over proper objection to testify, the objection was not waived by cross-examination of the witness. No more upon reason is objection waived when the incompetency rests upon the statute than when it rested upon interest. While there are no other Wisconsin cases touching the point, cases from seven states are cited and stated in a note in 64 A. L. R. 1161, to the effect that cross-examination under the instant situation, unless extended to new matter, does not waive objection under statutes like our sec. 325.16, Stats. A note in 107 A. L. R. 489, cites and states cases to the same effect from six additional jurisdictions. No cases to the contrary are cited in either note. The rule is stated to the same effect in 70 C. J. p. 373. We hold that there was no waiver of the objection by cross-examination in the instant case.

The plaintiff lastly claims that the damages assessed, $375 for an injured heel that prevented her walking for a month, are so inadequate as to render the verdict perverse. By the plaintiff's testimony all but $100 was for special damages leaving only the latter sum as compensation for her pain and suffering. By the testimony of plaintiff's physician, the only physician who testified, recovery was complete and without

any permanent effect. It must be conceded that the allowance was so small as to verge upon inadequacy. But the testimony of the plaintiff was such as to justify the jury in considering her claims both as to suffering and special damages exaggerated. We cannot hold the award so beyond reason as to render the verdict perverse.

*By the Court.*—The judgment of the circuit court is affirmed.