Edward N. Gerczak, Jr., Appellant,

v.

Estate of Edward N. Gerczak, Sr., by his Personal Representative Gary Klise, Respondents.

Court of Appeals

*No. 2005AP70–FT. Submitted on briefs May 16, 2005.*
*—Decided June 14, 2005.*

2005 WI App 168

(Also reported in 702 N.W.2d 72.)

On behalf of the appellant, the cause was submitted on the briefs of *Thomas O. Schultz* of Green Bay.

On behalf of the respondent, Gary Klise, the cause was submitted on the brief of *Brian R. Mudd* of Green Bay

On behalf of the respondent, Estate of Edward N. Gerczak, Sr., the cause was submitted on the brief of *Robert R. Gagan* of *Calewarts, Duffy, Maxell & Gagan* of Green Bay.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J.   Edward Gerczak, Jr., appeals a judgment and order that his contested claim against his father's estate for the value of uncashed payroll checks dating from 1990, 2000, and part of 2001 is barred by WIS. STAT. § 893.44(1), the statute of limitations for actions on unpaid wages.[1] Edward, Jr. argues that these checks represented loans to the family business rather than unpaid wages and that his action is governed not by the two-year statute of limitations for unpaid wages, but the six-to-ten-year limitation for actions on notes, WIS. STAT. § 403.118(2), or the six-year limitation for actions on contracts, WIS. STAT. § 893.43. Edward, Jr. further argues that the court erred when it determined that, under WIS. STAT. § 885.16, the so-called "deadman's statute," his wife Mary Gerczak was incompetent to testify that Edward, Sr. was in the habit of treating payroll checks as loans.

¶ 2.   Because we conclude that, for the purposes of WIS. STAT. § 885.16, Mary has a "present, certain, and vested" interest in the outcome of this action, we agree she is disqualified from testifying about any conversations or transactions she had with Edward, Sr. relating to

---

[1] This is an expedited appeal under WIS. STAT. RULE 809.17. All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

her husband's payroll checks. We also agree that, absent any evidence to the contrary, the uncashed payroll checks represent unpaid wages rather than loans. The judgment and order are therefore affirmed.

## Background

¶ 3.   During his life, Edward Gerczak, Sr. was the sole proprietor of a business, Allouez Beer & Liquor, Ltd., that he operated with his wife, Vivian Gerczak. Edward, Jr. began working at Allouez part-time while he was in high school. After graduating from high school, Edward, Jr. married and became a full-time Allouez employee. As the years went by, he assumed greater responsibility for the business and his wife, Mary, eventually became Allouez's bookkeeper.[2]

¶ 4.   According to Mary, Allouez generally had cash flow problems at the beginning of each year.[3] At other times, Allouez suffered from cash shortfalls because it was required to pay its beer suppliers within fifteen days and its liquor suppliers within thirty days. Mary testified that it was common practice for either Edward, Jr. or Edward, Sr. to hold their payroll checks when cash flow was a problem.

---

[2] The couple married in 1976. In the .early days of the marriage, Mary worked as a clerk and stocker at Allouez; by the 1980s, she began doing Allouez's books, preparing sales records, sales tax reports, and spreadsheets for Robert Patrickus, who used that information to file tax returns for the business. After 1995, Mary worked as a full-time special needs aide at a local middle school, but apparently continued to do the Allouez bookkeeping.

[3] The court allowed Mary to testify about her duties and responsibilities as Allouez's bookkeeper and about some general patterns of business practice.

¶ 5. By 1991, Edward, Sr. had developed serious health problems, including arthritis and a heart condition. In 1998, Vivian entered a nursing home. The resulting medical bills placed increased pressure on the family business. As his father's health worsened, Edward, Jr. effectively took over the day-to-day running of Allouez. On January 20, 2003, Edward, Sr. died.

¶ 6. Evidence suggests that Edward, Sr. intended Edward, Jr. to have the business after his death. A revocable trust established in 2002 gave all stock in Allouez Beer and Liquor, Ltd. to Edward, Jr.; the residue of the estate was to be divided between Edward, Jr. and his sister, Barbara. That same year, Allouez was incorporated. Because no assets were ever transferred into the corporation, however, the business passed into the residual estate.

¶ 7. In August 2003, Edward, Jr. filed a claim against his father's estate for $102,011.16 for loans made to Allouez and unpaid wages. He amended his claim in January 2004 to $160, 977.81 plus interest, and again in March, when he claimed $ 164,056.88 plus interest. Edward, Jr. argued that because the uncashed payroll checks he held represented money loaned to the business, his claim was governed by the six-year statute of limitations for contract actions. Barbara contested his claim.

¶ 8. In August 2004, a hearing on the contested claim was held. Barbara objected to Mary's testimony that the unpaid payroll checks were loans to the business, arguing that Mary was an interested party under Wisconsin's deadman's statute. The court agreed and limited Mary's testimony to evidence of standard business practices. After objections to the testimony of the certified public accountant, Robert

Patrickus, the parties were ordered to brief evidentiary and statute of limitations issues. In October, the court issued a written decision concluding that while the deadman's statute did not prohibit Patrickus from testifying,[4] any evidence he might give about the significance of the records he prepared would be inadmissible hearsay if it was based on conversations or transactions that Edward, Jr. or Mary reported having with Edward, Sr.[5]

¶ 9. The court's final judgment on the claim indicated it had also concluded that there was insufficient evidence to establish that the uncashed checks represented loans and not unpaid wages. It therefore ruled that the two-year statute of limitations for unpaid wages barred Edward, Jr. from collecting any wages owed to him from before August 2001. Edward, Jr. now appeals.

---

[4] Edward, Jr.'s brief to this court suggests he objects to the trial court's decision that the deadman's statute bars Patrickus, from testifying about the alleged loans. What the trial court actually concluded was: "Patrickus's testimony regarding any loans is not precluded by the DMS [the deadman's statute]. However, such evidence is inadmissible hearsay if it is based on information obtained from Ed., Jr. or Mary." In any event, Edward, Jr. neither develops an argument about the deadman's statute nor responds to the estate's argument that it would be inadmissible hearsay for Patrickus to testify about information he received from Edward, Jr. or Mary. We therefore do not address either argument. *See State v. Flynn*, 190 Wis. 2d 31, 39 n.2, 527 N.W.2d 343 (Ct. App. 1994) (We ordinarily decline to address arguments raised on appeal that are inadequately briefed.); *Charolais Breeding Ranches v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (An argument not refuted is deemed admitted.).

[5] Patrickus indicated that he had never discussed loans or holding payroll checks with Edward, Sr.

## Discussion

### 1. Standard of Review

■

¶ 10.   The interpretation of statutes and the application of statutes to uncontested, relevant facts are questions of law this court reviews without deference. *See State v. Setagord*, 211 Wis. 2d 397, 405–06, 565 N.W.2d 506 (1997). The application of one statute to another is similarly a question of law. *See State ex rel. Sielen v. Milwaukee County Circuit Court*, 176 Wis. 2d 101, 106, 499 N.W.2d 657 (1993). We attempt to harmonize statutes, if possible, by reading them together in a way that will give each full force and effect. *See City of Milwaukee v. Kilgore*, 193 Wis. 2d 168, 184, 532 N.W.2d 690 (1995). Conflicts between statutes are disfavored and will be held not to exist if the statutes may be otherwise construed. *See Ahrens-Cadillac Oldsmobile, Inc. v. Belongia*, 151 Wis. 2d 763, 766, 445 N.W.2d 744 (Ct. App. 1989).

### 2. The Deadman's Statute and Spousal Competency

¶ 11.   This contested claim case presents a problem of first impression: whether Wisconsin's Marital Property Act, WIS. STAT. ch. 766, affects the application of WIS. STAT. § 885.16, the deadman's statute, and specifically whether spouses whose interests were too remote or contingent before the Marital Property Act to prevent them from testifying are now incompetent in some circumstances. Edward, Jr. argues that neither Wisconsin case law nor public policy supports expanding the applicability of the deadman's statute in this way. The estate contends that, under the Marital Property Act, Mary is an interested witness because she will

404

"gain or lose by the direct legal operation and effect of the judgment." *Estate of Christopherson*, 2002 WI App 180, ¶ 22, 256 Wis. 2d 969, 650 N.W.2d 52. Based on the particular facts of this case, we agree with the estate.

¶ 12.  Like many deadman's statutes, Wis. Stat. § 885.16 establishes a broad categorical exception to the general rule of competency.[6] "Every person is competent to be a witness except as provided by . . . [§§] 885.16 and 885.17."[7]  Wis.  Stat.  § 906.01.  Under  Wisconsin's deadman's statute, § 885.16, first codified in 1858,

> [n]o party or person in the party's or person's own behalf or interest, and no person from, through or under whom a party derives the party's interest or title, shall be examined as a witness in respect to any transaction or communication by the party or person personally with a deceased or insane person in any civil action or proceeding, in which the opposite party derives his or her title or sustains his or her liability to the cause of action from, through or under such deceased or insane person . . . .

The statute has its roots in the common law principle that an interested party will be powerfully tempted to misrepresent transactions or communications with a person who cannot, because of death or mental incapac-

---

[6] Eighteen states retain some form of the deadman's statute; but only eleven, in addition to Wisconsin, have statutes absolutely barring testimony from an interested witness as to transactions with the deceased. *See* Shawn K. Stevens, *The Wisconsin Deadman's Statute: The Last Surviving Vestige of an Abandoned Common Law Rule*, 82 Marq. L. Rev. 281, 283 n.5, 284 n.8, 294 (1998).

[7] The latter exception merely extends Wis. Stat. § 885.16 to transactions the party has had with an agent of the adverse party when that agent is deceased.

ity, rebut the party's testimony. *See, e.g., Havlicek/ Fleisher Enters., Inc. v. Bridgeman*, 788 F. Supp. 389, 396–97 (E.D. Wis. 1992). Criticism of the principle of an interested party's incompetence dates back to the nineteenth century. Modern American scholars and jurists have been equally critical of its lingering manifestations, and our nation's courts have moved steadily away from categorical exclusions for incompetence toward individual determinations of credibility.[8]

¶ 13. As early as 1940, the State Bar recommended that Wisconsin's deadman's statute be repealed.[9] Our supreme court has expressed a similar discomfort with the survival of what it has characterized as a vestige of "an archaic view of the law," *Estate of Molay*, 46 Wis. 2d 450, 458, 175 N.W.2d 254 (1970), and a "plague" on the trial bar, *Carson v. City of Beloit*, 32 Wis. 2d 282, 288, 145 N.W.2d 112 (1966). Thus, while WIS. STAT. § 885.16 remains in force, its application has been limited in several ways. The statute is, most importantly, strictly interpreted. *See Estate of Nale*, 61 Wis. 2d 654, 659, 213 N.W.2d 552 (1974). There are also strict rules for the invocation of the deadman's statute. To be valid, an objection under WIS. STAT. § 885.16 must, for example, be addressed not to the admissibility of the evidence, but to the witness's competency to

---

[8] *See, e.g.,* Stevens, *supra,* at 285–86, 294 n.68, 295–301; *see also* Joseph A. Colquitt & Charles W. Gamble, *From Incompetency to Weight and Credibility: The Next Step in an Historic Trend,* 47 ALA. L. REV. 145, 147–48 (1995).

[9] Objections to the statute have continued. In 1973, for example, the Judicial Council's Rules of Evidence Committee again recommended repeal. *See Casper v. McDowell,* 58 Wis. 2d 82, 86 n.4, 205 N.W.2d 753 (1973).

testify about a particular conversation or transaction.[10] *See Carson*, 32 Wis. 2d at 288.

*3. Spousal Competency before the Marital Property Act*

¶ 14.   In a line of cases decided before January 1, 1986, the date the Marital Property Act went into effect, strict interpretation of the deadman's statute led Wisconsin courts to find that party spouses, and other near relatives, were competent to testify because their interests were too "remote and contingent" to disqualify them.[11] Only an interest that was "present, certain, and vested" rendered a witness incompetent. *See Estate of Christen*, 72 Wis. 2d 8, 12, 239 N.W.2d 528 (1976). The true test of a disqualifying interest is, as the supreme court noted in a different context, whether the witness will "gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action." *In re Williams' Will*, 256 Wis. 338, 350, 41 N.W.2d 191 (1950).

---

[10] Failure to object in the proper form constitutes waiver. *See Carson v. City of Beloit*, 32 Wis. 2d 282, 288, 145 N.W.2d 112 (1966).

[11] *See Carlsen v. Hardware Mut. Cas. Co.*, 255 Wis. 407, 410, 39 N.W.2d 442 (1949) (wife competent to testify about conversations with the deceased in a personal injury suit brought by her husband); *Estate of Christen*, 72 Wis. 2d 8, 12, 239 N.W.2d 528 (1976) (husband competent to testify about conversations with decedent in whose estate his wife had an interest); *see also Estate of Nale*, 61 Wis. 2d 654, 659–60, 213 N.W.2d 552 (1974) (daughter competent to testify in support of her mother's claim against an estate); *Estate of Komarr*, 68 Wis. 2d 473, 480, 228 N.W.2d 681 (1975) (mother competent to testify in proceeding in which her children's claim to be among decedent's heirs was an issue).

¶ 15. As the parties in this case recognize, this line of cases remains precedent and would control the question of Mary's competence unless the Marital Property Act, by altering the nature of a spouse's interest in certain kinds of property, changes the character of the spouse's interest in a legal action.

*4. Spousal Competency After the Marital Property Act*

¶ 16. Edward, Jr. is correct that no Wisconsin case law directly supports the proposition that the Marital Property Act may make party spouses incompetent to testify under the deadman's statute. Indeed, he points to *Havlicek/Fleisher*, a 1992 decision referring to the line of cases discussed above, as authority for the argument that the Marital Property Act has not altered the operation of Wis. Stat. § 885.16. *Havlicek/Fleisher*, 788 F. Supp. at 400. However, *Havlicek/Fleisher* is a federal district court opinion, focusing on an entirely different application of Wisconsin's deadman's statute. *See id.* The passages cited by Edward, Jr. are merely dicta and any persuasive authority they might have is undercut by the absence of any indication that the court was remotely concerned with the issue before us. *See id.* at 397.

¶ 17. In the absence of any Wisconsin case law addressing the interaction of Wis. Stat. ch. 766, the Marital Property Act, and Wis. Stat. § 885.16, the deadman's statute, we begin by considering how the Marital Property Act affects a spouse's interest in wages or loans, the type of property at issue in this case.[12]

---

[12] It is perhaps not surprising, given that there are only nine community property states in the country and eighteen states with deadman's statutes, that there is no foreign precedent that directly addresses this question.

¶ 18.    Modeled after the Uniform Marital Prop-
erty Act, the Marital Property Act transformed Wiscon-
sin from a common law property state to a community
property state.[13] One immediate effect was to change
how property was classified. All property of spouses is
now marital property except property that is statutorily
exempt[14] or classified otherwise by valid agreement of
the spouses. WIS. STAT. § 766.31(1). All property of
spouses is also presumed to be marital property; each
spouse has a present undivided one-half interest in each
item of marital property. WIS. STAT. § 766.31(2) and (3).
In addition, "[e]xcept as provided under subs. (7) (a),
(7p) and (10), income earned or accrued by a spouse or
attributable to property of a spouse during marriage
and after the determination date is marital property."
WIS. STAT. § 766.31(4).

¶ 19.    Under WIS. STAT. § 766.31, one spouse's
income is marital property in which both spouses have
a present undivided half interest. In any claim for
unpaid wages, therefore, a non-wage earning spouse
has the same interest in the potential income as the
spouse who earned the wages. Even if the claim in this
case involves an unpaid loan, the money used to make
that loan would presumptively be marital property,
used for a marital purpose and, in the absence of
evidence demonstrating that it was separate property,
Mary would again have the same interest in that

---

[13] *See* Howard S. Erlanger & June M. Weisberger, *From
Common Law Property to Community Property: Wisconsin's
Marital Property Act Four Years Later,* 1990 WIS. L. REV. 769,
770, 773–75.

[14] Third party gifts to one spouse and property inherited by
one spouse remain, for example, the property of the individual
spouse for the purpose of classification. *See* WIS. STAT.
§ 766.31(7)(a).

property as her husband. Thus, to the extent that Mary and Edward, Jr. would have the same ownership interest in the property that gives rise to this action, and the same right to control and manage that property, her interest in the outcome of the litigation is as "present, certain, and vested" as her husband's.

¶ 20. The supreme court's analysis in *Christen* provides support for our holding. Whether an interest is remote or contingent does not depend on the witness's status as husband, child, or wife. *See Christen*, 72 Wis. 2d at 13. *Christen* recognized that changing intestacy and election provisions may alter the interest a potential witness would have in a spouse's estate and thus could have an effect on that witness's interest in a legal action to which the spouse was party. *Id.* While *Christen* rejected the argument that the particular provisions identified in that case had sufficient effect on the ultimate interest to bar the witness from testifying, it did not reject the premise of the argument.

¶ 21. We thus conclude that Mary is not competent to testify about transactions or conversations with Edward, Sr. about the significance of her husband's unpaid payroll checks. We also agree with the circuit court that, without evidence that those checks were intended as loans, the two-year statute of limitations on actions for unpaid wages applies to Edward, Jr.'s claims.

*By the Court.*—Judgment affirmed.