Gary D. RUTTER and Jeanne M. Rutter,
Plaintiffs-Respondents,

v.

Bonnie J. COPPER, James R. Copper, David Tower,
Nancy Tower, Fred Tower and Beulah Tower,
Defendants-Appellants.

Court of Appeals

*No. 2012AP25. Submitted on Briefs August 7, 2012.
—Decided October 4, 2012.*

2012 WI App 128

(Also reported in 824 N.W.2d 885.)

On behalf of the defendants-appellants, the cause was submitted on the brief of *Ross A. Seymour* of *Seymour Law*, La Crosse.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *David L. Jenkins* of *Jenkins and Stittleburg*, Viroqua.

Before Lundsten, P.J., Higginbotham and Kloppenburg, JJ.

¶ 1. KLOPPENBURG, J.    This appeal concerns the proper application of Wis. Stat. § 885.16 (2009–10),[1] commonly referred to as the "dead man's statute." The Towers[2] appeal a circuit court judgment declaring that Gary D. Rutter and Jeanne M. Rutter possess a prescriptive easement on the Tower property. The Towers assert that the circuit court erred in its application of § 885.16. Specifically, the Towers argue that the proper application of § 885.16 renders Beulah Tower competent to testify that she gave the Rutters' predecessor-in-interest, Laverne Hutson, permission to use a land corridor on the Tower property in a conversation with Hutson in 1962. We conclude, under controlling case law and on the specific facts before us, that § 885.16 prohibits Beulah Tower from testifying about her having given Laverne Hutson permission to use that corridor in a conversation with Hutson in 1962. Therefore, we conclude that the circuit court correctly excluded proffered "permission" testimony from Beulah Tower and we affirm.

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted. Wisconsin Stat. § 885.16 was renumbered from Wis. Stat. § 325.16 by 1965 Wis. Laws, ch. 66, § 2, and has existed in its current form, with amendments not relevant to this appeal, since at least 1901. See 1907 Wis. Laws, ch. 197 approving 1901 Wis. Laws, ch. 181, § 1. Some of the case law cited in this opinion addresses the predecessor statute § 325.16, and the changes to the statute since do not affect our analysis.

[2] The court will refer to the Towers as the appellants in this opinion. While the Rutters had originally alleged an action against Bonnie and James Copper, the Rutters dismissed that claim at the end of trial. Furthermore, during trial, the Rutters dismissed Fred Tower as a party. Bonnie J. Copper, James R. Copper, and Fred Tower remain named parties of record and are included in the case caption.

## BACKGROUND

¶ 2.   The Rutters own two triangular-shaped parcels of land abutting the Mississippi River. The Rutters acquired the northern parcel by warranty deed from Laverne Hutson in 1993. The Rutters obtained title in fee simple to the southern parcel with Bonnie J. Copper and James R. Copper in 1994.

¶ 3.   David Tower and Nancy Tower own the Tower property in fee simple. Beulah Tower, David's mother, retains a life estate and resides on the property. The Tower property and the two Rutter parcels meet together at a narrow point. To reach their southern parcel from their northern parcel, and vice versa, the Rutters would cross over the corner of the Tower land.

¶ 4.   On December 10, 2010, the Rutters filed their complaint seeking a declaratory judgment that they possess a "prescriptive easement in the way of access" on the corner of the Tower property. The Rutters assert that they and their predecessors-in-interest have continuously and adversely crossed over the Tower property for at least twenty years, thereby entitling them to a prescriptive easement. According to the Rutters' complaint, David Tower recently placed cables on the Tower property so as to prevent the Rutters' use.

¶ 5.   The parties tried the matter to the circuit court on September 15, 2011. The Towers called Beulah Tower as a witness. Beulah acquired an interest in the Tower property in 1954. She knew Laverne Hutson, the Rutters' predecessor-in-interest, as he was a neighbor. She testified that Laverne's uncle Guy Hutson had walked over the Tower corridor when he had owned the Rutter parcels, that after Guy died in 1962 his nephew Laverne took over the Rutter property, and that Laverne drove over the Tower corridor. Gary Rutter

testified that Laverne Hutson crossed the Tower corridor from at least the early 1950's (when Rutter, who was born in 1944, was eight or ten years old). Laverne Hutson was no longer living at the time of trial.

¶ 6. During direct examination of Beulah, the Towers' counsel began to ask Beulah "[d]id you speak with Mr. Hutson in 1962 –" to which the Rutters' counsel objected, based upon the competency of the witness under WIS. STAT. § 885.16.

¶ 7. During his offer of proof, the Towers' counsel explained that he was going to ask Beulah if she "unilaterally gave Mr. Hutson permission to cross the corner of that property in 1962." The court ruled as follows:

> The Court is aware that the dead man's statute has been viewed with disfavor by the courts and the Supreme Court of Wisconsin has routinely voiced its displeasure in the language of the statute. However, the statute still exists. And this Court is bound to follow it. I acknowledge the argument of Attorney Seymour that the statute must be strictly construed. In this case the Court finds that Beulah Tower does have an interest and that interest is a life estate. Mr. Seymour suggests that a communication between Ms. Tower and the deceased, Mr. Hutson, does not fall within 818.16 [sic] because it is being offered to show what the witness here has said, not necessarily what the response of the deceased is .... But that communication which is a grant – let me restate that. According to the offer of proof that communication would be a grant of permission to Mr. Hutson, which grant would establish a claim of Ms. Tower under the adverse possession law and I think as long as Ms. Tower retains a life estate she has the right to enforce her claim to the property and that claim would be enforced through the granting of permission to Mr. Hutson. Therefore I believe that 885.16

prohibits testimony from Ms. Tower as to her conversation with Mr. Hutson. So, the objection is sustained.

¶ 8. After trial, the court entered its Findings of Fact, Conclusions of Law and Judgment, declaring that the Rutters possess a prescriptive easement allowing use of the corridor. The court specifically found that "[n]o evidence was admitted establishing permissive use of the corridor by George Hutson or plaintiffs." The Towers appeal the court's judgment.

## DISCUSSION

¶ 9. The Towers raise the following three arguments. First, Beulah Tower does not hold an interest in the property that would exclude her testimony under WIS. STAT. § 885.16. Second, Beulah Tower's grant of permission to Hutson to use the property is not a "transaction or communication" within the meaning of the statute. Third, § 885.16 does not apply because the anticipated testimony was in defense to the Rutters' claims.

¶ 10. The Towers' arguments concern the proper application of WIS. STAT. § 885.16 as to Beulah Tower's competency to testify. Although a court's decision to admit or exclude evidence generally lies within its discretion, a court's interpretation and application of a statute to a set of facts is a question of law, which we review de novo. *Bell v. Neugart*, 2002 WI App 180, ¶ 15, 256 Wis. 2d 969, 650 N.W.2d 52.

### I. Dead Man's Statutes, Generally.

¶ 11. Known as Wisconsin's "dead man's statute," WIS. STAT. § 885.16 establishes a broad categorical exception to the general rule of competency. *See* WIS. STAT.

§ 906.01 ("Every person is competent to be a witness except as provided by ss. 885.16 and 885.17 . . . .").

> No party or person in the party's or person's own behalf or interest, and no person from, through or under whom a party derives the party's interest or title, shall be examined as a witness in respect to any transaction or communication by the party or person personally with a deceased or insane person in any civil action or proceeding, in which the opposite party derives his or her title or sustains his or her liability to the cause of action from, through or under such deceased or insane person . . . .

Wis. Stat. § 885.16. We have previously explained: "Although the wording of the statute is cumbersome, the core meaning is that it disqualifies a witness to a transaction or communication with a decedent from testifying about that transaction or communication in his or her favor, or in the favor of any party to the case claiming under the witness." *Bell*, 256 Wis. 2d 969, ¶ 17.

¶ 12. The dead man's statute stems from the common-law notion that courts must safeguard proceedings from interested parties misrepresenting transactions or communications with a person who cannot rebut the party's testimony due to death or mental incapacity. *Gerczak v. Estate of Gerczak*, 2005 WI App 168, ¶ 12, 285 Wis. 2d 397, 702 N.W.2d 72. However, the dead man's statute has received considerable criticism in Wisconsin and nationwide. *State v. Fonk's Mobile Home Park & Sales, Inc.*, 133 Wis. 2d 287, 296, 395 N.W.2d 786 (Ct. App. 1986). Over 40 years ago, the Wisconsin Supreme Court expressed its discomfort with the statute's reliance on such an "archaic view" of the law:

> While the statute is occasionally, though rarely with any degree of sincerity, defended on the ground that it would be unfair to permit a survivor to give his version of a transaction when the other party's mouth is stopped in death, the more realistic position, and one which constitutes the underpinning of the decisions of this court, was stated in 1948 by George R. Currie, later Chief Justice of Wisconsin, in *Transactions with Deceased Persons* . . .: " 'Are not the estates of living men endangered daily by the present rule which bars from proof so many honest claims? Can it be more important to save deadmen's estates from false claims, than to save living men's estates from loss by lack of proof?' "

*Long v. Molay*, 46 Wis. 2d 450, 458, 175 N.W.2d 254 (1970) (citation omitted).

¶ 13. The Federal Rules of Evidence do not contain a dead man's statute, and many states have abolished their respective statutes. Ed Wallis, *An Outdated Form of Evidentiary Law: A Survey of Dead Man's Statutes and a Proposal for Change,* 53 CLEV. ST. L. REV. 75, 80–82 (2005). In Wisconsin, both the State Bar and the Judicial Council's Rules of Evidence Committee have recommended repeal of Wisconsin's dead man's statute. *See Gerczak*, 285 Wis. 2d 397, ¶ 13 n.9. Yet, WIS. STAT. § 885.16 remains in force, and we turn to the Towers' arguments that it should not apply here.

## II.  Interested Party.

■

¶ 14. WISCONSIN STAT. § 885.16 bars any "party or person" from testifying "in the party's or person's own behalf or interest" as to any "transaction or communication by the party or person personally with a deceased" person. It is undisputed that Beulah Tower is a

named party, and the issue raised by the Towers is whether she is an "interested" party.

¶ 15.   The dead man's statute disqualifies a witness from testifying if he or she has a personal interest in the outcome of the case or if a named party to a lawsuit derives a personal interest through that particular witness. Kristen Dibley, Comment, *The Deadman's Statutes – Who Is An Interested Party in Wisconsin?*, 87 MARQ. L. REV. 1025, 1028 (2004). Simply stated, the test is whether the witness will " 'gain or lose by the direct legal operation and effect of the judgment.' " *Giese v. Reist*, 91 Wis. 2d 209, 224, 281 N.W.2d 86 (1979) (citation omitted). Thus, the witness's interest must be "present, certain and vested, not just a remote or contingent interest." *Id.*

¶ 16.   The Towers argue that Beulah Tower's interest in the property is insufficient to disqualify her under WIS. STAT. § 885.16. We disagree. Although Beulah Tower has transferred the property in fee simple to her son and daughter-in-law, she retains a life estate and resides on the property. It is true that a life tenant enjoys fewer rights than a holder in fee simple, but a life estate nevertheless constitutes an interest in property. *See* WIS. STAT. § 700.02(3) (including an "interest for life" as an interest in property). Moreover, Beulah Tower stands to gain or lose by the court's decision, as life tenants " 'may use the property for [their] exclusive benefit and take all the income and profits.' " *Holmlund v. La Crosse Trust Co.*, 261 Wis. 206, 211, 52 N.W.2d 141 (1952) (citation omitted). The court's determination whether a prescriptive easement exists on the Towers' property affects the

benefits that Beulah derives from the property. For these reasons, we conclude that Beulah Tower is an interested party.

### III.   Transaction or Communication.

¶ 17.   Even if a witness is deemed an "interested" party, his or her proposed testimony must constitute a transaction or communication in order to be barred under the dead man's statute. *See generally* WIS. STAT. § 885.16.

¶ 18.   The Wisconsin Supreme Court has adopted a narrow interpretation of "transaction" as used in the dead man's statute. *See Seligman v. Hammond*, 205 Wis. 199, 206, 236 N.W. 115 (1931). A "transaction" under WIS. STAT. § 885.16 means a "mutual transaction between the deceased and the surviving party, one in which they both actively participate." *Seligman*, 205 Wis. at 206. The statute does not bar a witness from testifying as to his or her observations and description of an event or a physical situation, if such testimony does not involve a mutual transaction in which the deceased actively participated. *Krantz v. Krantz*, 211 Wis. 249, 255, 248 N.W. 155 (1933), *overruled in part on other grounds by Theisen v. Milwaukee Auto Mut. Ins. Co.*, 18 Wis. 2d 91, 118 N.W.2d 140 (1962).

¶ 19.   The Wisconsin Supreme Court has adopted a broader interpretation of "communication" as used in WIS. STAT. § 885.16, to include statements made to a deceased, irrespective of whether or how the deceased responded. *See Jackowska-Peterson v. D. Reik & Sons Co.*, 240 Wis. 197, 201, 2 N.W.2d 873 (1942). In *Jackowska-Peterson*, a pedestrian brought an action for

injuries she sustained when a truck driver suddenly started his truck while she was attempting to pass. *Id.* at 198–99. At trial, the pedestrian testified in her favor that while she was passing the truck, she shouted " '[w]ait' " to the driver as he mounted the cab. *Id.* at 200. Because the truck driver died prior to trial, the opposing party objected to the pedestrian's testimony. *Id.* The court held that under the dead man's statute, the pedestrian was incompetent to testify that she called to the driver to wait, reasoning that such testimony constituted a " 'personal communication' " with the decedent. *Id.* at 201. The court concluded: "We consider that the statements [sic] as to what the plaintiff said to the deceased was a 'personal communication' and barred by the statute." *Id.* at 201.

¶ 20.   The Towers argue that Beulah Tower's giving permission to Laverne Hutson to cross the property was not a transaction or communication within the meaning of the statute, because it was a unilateral declaration. The ruling in *Jackowska-Peterson* defeats the Towers' argument. The analysis in *Jackowska-Peterson* indicates that informing a person about what that person is doing (such as starting a truck in *Jackowska-Peterson*, or driving a car too fast in *Waters v. Markham,* 204 Wis. 332, 344, 235 N.W. 797 (1931), cited by *Jackowska-Peterson*) is an effort to communicate something, and so the dead man's statute prohibits testimony about that communication. So, here, Beulah Tower's testimony about informing Hutson that what he was already doing (crossing her property) was with her permission, was an effort to communicate something and is therefore barred by WIS. STAT. § 885.16.

¶ 21.   On the one hand, the Wisconsin Supreme Court has in effect directed that courts "alleviate the harshness of the rule by insisting upon exceptionally

strict rules for its invocation." *Long*, 46 Wis. 2d at 459; *Havlicek/Fleisher Enterprises, Inc. v. Bridgeman*, 788 F. Supp. 389, 400 (E.D. Wis. 1992) (applying Wisconsin law and stating: "Since current law expresses disdain for the Dean Man's Statute, this Court is obliged to construe it narrowly and limit its application whenever possible."). On the other hand, the Wisconsin Supreme Court has laid down a fairly broad rule for applying the statute to statements made to deceased persons. Applying that rule here, we conclude that Beulah Tower's statement granting permission to the since-deceased Laverne Hutson was a communication within the meaning of WIS. STAT. § 885.16, and therefore she is not competent to testify as to her communication giving him permission to cross her land. Accordingly, the circuit court correctly excluded the proffered testimony.

## IV. Testimony as a Defense to Plaintiffs' Cause of Action.

¶ 22. Finally, the Towers argue that because they intended to offer Beulah Tower's testimony as a defense to the Rutters' cause of action, it is not subject to WIS. STAT. § 885.16. They assert that the application of the statute on these facts deprives them of their defense of permissiveness, and they set forth policy reasons why we should not apply the statute to lead to that result. Policy arguments as to why a statute should not be applied in this or similar scenarios is no substitute for a statutory interpretation argument. The Towers have not presented a developed statutory interpretation argument and we decline to address the matter further. *See State v. Butler*, 2009 WI App 52, ¶ 17, 317 Wis. 2d 515, 768 N.W.2d 46 (declining to address undeveloped argument).

## CONCLUSION

¶ 23.  The circuit court correctly found, on the facts in this case, that Beulah Tower is an interested party and she is not competent to testify as to her communication giving the since-deceased Laverne Hutson permission to cross her property.

*By the Court.*—Judgment affirmed.